**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | :  Chapter 11 |
| | : |
| FIRSTRAIN, INC., | :  Case No. 17- |
| | : |
| Debtor.[1] | : |
| | : |

**MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a), 363(b), 363(c), 507(a), 541(b)(7), 541(d), 1107(a) AND 1108 OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 6003 AND 6004 (I) AUTHORIZING THE DEBTOR TO (A) PAY SEVERANCE, VARIABLE COMMISSIONS, CERTAIN PREPETITION WAGES, COMPENSATION, AND EMPLOYEE BENEFITS, (B) CONTINUE PAYMENT OF SEVERANCE, VARIABLE COMMISSIONS, WAGES, COMPENSATION, AND EMPLOYEE BENEFITS IN THE ORDINARY COURSE OF BUSINESS AND (C) CONTINUE PAYMENT OF EMPLOYMENT, UNEMPLOYMENT, SOCIAL SECURITYAND OTHER TAXES INCIDENT TO THE EMPLOYEE OBLIGATIONS; AND (II) AUTHORIZING AND DIRECTING THE DEBTOR'S THIRD-PARTY PAYROLL ADMINISTRATOR AND DEBTOR'S BANK TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS ISSUED AND ELECTRONIC PAYMENT <u>REQUESTS RELATING TO THE FOREGOING</u>**

FirstRain, Inc., as debtor and debtor in possession in the above-captioned chapter 11 case

(the "<u>Debtor</u>"), hereby files this Motion ("<u>Motion</u>"), pursuant to sections 105(a), 363(b), 363(c),

507(a), 541(b)(7), 541(d), 1107(a) and 1108 of title 11 of the United States Code, 11 U.S.C. §§

101, *et seq.* (the "<u>Bankruptcy Code</u>"), for entry of interim and final orders, substantially in the

forms annexed hereto as **Exhibit A** (the "<u>Interim Order</u>") and **Exhibit B** (the "<u>Final Order</u>"), (i)

authorizing, but not directing, the Debtor to (a) pay certain prepetition severance, variable

commissions, wages, compensation, and employee benefits, (b) continue post-petition payment

of severance, variable commissions, wages, compensation, and employee benefits in the ordinary

course of business, and (c) pay all employment, unemployment, Social Security, and federal,

state, and local taxes relating to the Employee Obligations (later defined); and (ii) authorizing

and directing the Debtor's third-party payroll administrator ADP, LLC ("<u>ADP</u>"), and all applicable banks to receive, process, honor, and pay all checks issued and electronic payment requests made related to the foregoing. In support of this Motion, the Debtor respectfully represents as follows:

**<u>JURISDICTION</u>**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion, to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. The statutory predicates for the relief requested in this Motion are sections 105(a), 363(b), 363(c), 507(a), 541(b)(7), 541(d), 1107(a) and 1108 of the Bankruptcy Code, as supplemented by Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

**<u>BACKGROUND</u>**

3. On the date hereof (the "<u>Petition Date</u>"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing this bankruptcy case (the "<u>Chapter 11 Case</u>"). The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The last four digits of the Debtor's federal tax identification number are 6970. The Debtor's principal place of business is located at 1500 Fashion Island, Boulevard Suite 200, San Mateo, CA.

4.     No trustee, examiner, or creditors' committee has been appointed in this chapter 11 case.

5.     The Debtor is an enterprise software company, whose core intellectual property is in data science and software algorithms that can discover, read and summarize useful insights about companies and markets from a vast universe of content across the global web and social media.   The Debtor's customers are typically Fortune 1000 enterprises, whose sales and marketing teams use the Debtor's products and services to track their customers, competitors and markets in a very detailed and highly personalized way.   The Debtor's applications, software and data sets are licensed as a subscription service.

6.     The Debtor's prepetition capital structure and the events leading up to the commencement of this case are set forth in *Declaration of Vivie Lee in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "<u>Lee Declaration</u>") filed concurrently herewith and fully incorporated by reference.

<u>**RELIEF REQUESTED**</u>

7.     The Debtor's employees perform a variety of critical functions and services.  The skill and experience of the Debtor's employees, as well as their relationships with customers and their knowledge of the Debtor's industry, are essential to the Debtor's ongoing operations and ability to effectively administer its businesses during the Chapter 11 Case.   Accordingly, to maintain morale and enhance the Debtor's ability to retain employees during the Chapter 11 Case, by this Motion, pursuant to sections 105(a), 363(b), 363(c), 507(a), 541(b)(7), 541(d), 1107(a) and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtor requests authority, but not the direction, to pay and honor certain prepetition claims and obligations, continue programs, and maintain funding, in the exercise of its discretion, relating

to, among other things: (a) Severance; (b) the Debtor's Variable Compensation Program; (c) Wages/Salary Obligations, Withholdings and Deductions; (d) Reimbursable Expenses and the Corporate Credit Card; (e) Employee Benefit Programs, in accordance with their terms; (f) the 401(k) Savings Plan; and (g) Other Employee Programs (each as defined herein and collectively, the "Employee Obligations").

8.      The Debtor further requests that the Court authorize ADP, Pacific Western Bank, successor by merger to Square 1 Bank (the "Pre-Petition Lender") and all other applicable financial institutions (each a "Bank" and collectively, the "Banks") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent requested by the Debtor in accordance with this Motion and the Debtor has sufficient funds standing to its credit with such Bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and that all such Banks be authorized to rely on the Debtor's designation of any particular check or electronic payment request as appropriate pursuant to this Motion, without any duty of further inquiry, and without liability for following the Debtor's instructions.

## A.      **The Debtor's Workforce**

9.      As of the Petition Date, the Debtor employs twelve (12) full-time salaried employees (collectively, the "Employees")[2].

## B.      **The Debtor's Severance Program**

---

[2] The Debtor's wholly owned subsidiary, FirstRain Software Centre Private Limited ("FirstRain India"), employs fifty (50) full time employees and six (6) independent contractors. FirstRain India's expenses, including its employee related expenses, are paid by the Debtor pursuant to that certain Services Agreement dated effective April 1, 2009. Prior to the Petition Date, FirstRain India's operational expenses were prefunded by the Debtor for a period of 90 days. On May 31, 2017, FirstRain India had to terminate the employment of twenty (20) employees to reduce operational costs.

10.     The Debtor maintains an ordinary course severance program (the "Severance Program") that is available to each of its regular Employees.  Prior to commencing this case, the Debtor had to terminate the employment of seven (7) employees to reduce operational costs.  The terminated employees all received severance payments in accordance with the Severance Program.  The total amount of these severance payments was approximately $49,000 (the "Pre-Petition Severance Amount").  The Pre-Petition Severance Amount was remitted to ADP prior to the Petition Date, and upon information and belief, remitted to the terminated employees.  However, out of an abundance of caution, the Debtor is requesting confirmation that ADP is authorized to remit/process any severance payment that has not fully cleared prior to the Petition Date (the "Severance").

11.     The Debtor also seeks authority to make post-petition severance payments to Employees terminated after the Petition Date, in accordance with the Severance Program (the "Severance Obligations"), provided, however, the Debtor is not seeking authority to pay any individual employee post-petition severance payments in excess of the $12,800 cap in § 507(a)(4) of the Bankruptcy Code or to make a severance payment to any "insiders"[3], in the Interim Order.

12.     Accordingly, the Debtor requests entry of the Interim Order authorizing the Debtor to pay Severance Obligations in an aggregate amount not to exceed the $12,800 cap for any employee, provided however, no such employee will be an "insider," followed by the final hearing on this motion and entry of the Final Order authorizing the Debtor to pay all other

---

[3] To accommodate the Office of the United States Trustee, the Debtor also has agreed not to seek first day relief to pay severance to any employees who presumptively are statutory insiders based on their title, but reserves its right to argue that such employees are not insiders, including, without limitation in connection with a key employee retention motion.

Severance Obligations, including those to certain "insiders." Provided, however, the total Severance Obligations shall not exceed $148,000.00.

**C.**     **The Debtor's Variable Compensation Program**

13.     In the ordinary course of business, the Debtor maintains a variable compensation program (the "Variable Compensation Program") that provides commission based compensation for certain employees (the "Commission Payments"). The Commission Payments are paid on a quarterly basis. The last Commission Payment, in the aggregate amount of $30,000, was made on May 31, 2017 and covered the period February 1, 2017 through April 30, 2017. The next Commission Payment is scheduled for August 31, 2017, and will cover the May 1, 2017 through July 31, 2017. In no event, will this Commission Payment exceed $25,000, and no employee will receive any compensation beyond the $12,800 cap in § 507(a)(4) of the Bankruptcy Code.

**D.**     **Wages and Salaries**

14.     The combined average monthly payroll for the Debtor's going forward Employees is approximately $166,000. This amount does not include the Debtor's share of payroll taxes. The Employees are paid an annual salary in semi-monthly payments (i.e., twenty-four (24) pay periods per year), the 15th and last working day of each month. The last pay period prior to the Petition Date was May 31, 2017, which covered all accrued wages through that date. The next pay period for the Debtor's Employees is June 15, 2017 and will cover all wages from June 1, 2017 through June 15, 2017.

**D.**     **Approximate Pre-Petition Payroll**

15.     From June 1, 2017 through the Petition Date, the Debtor estimates that a total of $60,000 in earned, but unpaid salary and wages is owed to the Employees and seeks authority to

pay that amount, plus any amounts for wages earned after the date hereof (the "Wages/Salary Obligations").

16. The Debtor seeks the authority, but not the direction, to pay its Employees the Wages/Salary Obligations in the ordinary course and consistent with past practice and to continue to pay such obligations in the ordinary course. For the avoidance of doubt, by this motion the Debtor does not seek to pay Wages/Salary Obligations, if any, to any Employee on account of pre-petition compensation in excess of the $12,850 priority wage cap imposed by section 507(a)(4) of the Bankruptcy Code.

D. **Gross Pay Deductions, Governmental Withholdings, and Payroll Taxes**

17. During each applicable payroll period, the Debtor (through its payroll administrator, ADP) may routinely deduct certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of health care benefits and insurance premiums, 401(k) contributions, legally ordered deductions, and miscellaneous deductions (collectively, the "Deductions"), and forward such amounts to various third-party recipients. In addition to the Deductions, certain federal and state laws require that certain amounts are withheld from the Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes for remittance to the appropriate federal, state, or local taxing authorities. The Debtor must then match the employee withholdings from its own funds and pay, based upon a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (together, the withholdings by the Employees and the Debtor, the "Withholdings"). The Withholdings are generally processed and forwarded to the appropriate

federal, state, and local taxing authorities at the same time the Employees' payroll checks are disbursed.  As of the Petition Date, the Debtor estimates that it will have minimal, if any, unpaid Deductions and Withholdings outstanding, and in any event not more than $3,000, all of which would come due within the first 30 days of the Chapter 11 Case.

18.     By this motion, the Debtor seeks authority, but not direction, to pay in a manner consistent with historical practice any unpaid Deductions and Withholdings.

**E.     Payroll Services**

19.     In the ordinary course of its business, the Debtor uses ADP to administer its payroll and employee plans, benefits, policies, and programs.  Approximately one (1) day before each semi-monthly payment of the Wages/Salary Obligations, the Debtor pre-funds all Wages/Salary Obligations owed to the Employees to ADP which administers the Debtor's payroll obligations.  ADP processes direct deposit transfers to the Debtor's Employees, as well as the appropriate third-party recipients of the Deductions and Withholdings.

20.     The services that ADP provides are critical to the smooth functioning of the Debtor's payroll system.  ADP is responsible for ensuring that (i) Employees are paid on time, (ii) appropriate deductions are made, (iii) payroll reporting is accurate, and (iv) appropriate amounts are remitted to the applicable taxing authorities and other third-party payees. The Debtor pays ADP approximately $1,000 per month (the "ADP Fee").

21.     As of the Petition Date, the Debtor estimates that it owes ADP approximately $1,200 for the ADP Fee.  By this motion, the Debtor seeks authority, but not direction, to pay the ADP Fee in the ordinary course and consistent with past practice and to continue payroll processing in the ordinary course during the administration of this chapter 11 case.

**F.     Reimbursable Expenses**

22.     In the ordinary course of business, the Debtor reimburses certain Employees and directors and officers for reasonable and customary expenses incurred in the scope of their employment in furtherance of the Debtor's business (collectively, the "Reimbursable Expenses").  Reimbursable Expenses include business expenses related to transportation, lodging, and other miscellaneous business expenses.  In some cases, Employees and directors/officers may not have submitted reimbursement requests in time to have been processed prior to the Petition Date.  In 2016, the Debtor paid a monthly average of approximately $32,000 for Business-Related Expenses.

23.     Based on historical figures, the Debtor estimates it could owe approximately $25,000 on account of prepetition Reimbursable Expenses as of the Petition Date and seeks authority to honor such obligations under the Proposed Order and to continue to pay the Reimbursable Expenses in the ordinary course.

**G.     Corporate Credit Card**

24.     The Debtor maintains a corporate credit card that the CFO is authorized to use to make necessary and authorized business purchases, such as business related travel, lodging, business purchases with certain vendors who require use of a credit card and other related business expenses (the "Corporate Credit Card").  The Corporate Credit Card is administered by the Pre-Petition Lender.  The Debtor pays the balance on the Corporate Credit Card directly to the Pre-Petition Lender.  In the aggregate, the Debtor incurs, on average, approximately $15,000 per month in business expenses charged to the Corporate Credit Card.

25.     The Debtor seeks authority to satisfy prepetition business expenses incurred on the Corporate Credit Card in an amount not to exceed $25,000.

26. The Debtor also seeks authority to continue the Corporate Credit Card in the ordinary course. The Corporate Credit Card is important to the Debtor's business operations insofar as it is one of the mechanisms by which business expenses incurred in the ordinary-course of business are paid without requiring the Employees themselves to advance funds on the Debtor's behalf and certain vendors require the Debtor to pay with a credit card.

**H. Employee Benefit Programs**

27. In the ordinary course of business, the Debtor maintains various employment benefit plans and policies, including, without limitation, a medical plan, a dental plan, a vision plan, life insurance, long-term disability insurance, short term disability insurance, flexible spending programs, dependent care accounts, commuter accounts, the Severance Program and other Employee programs (collectively, the "Employee Benefit Programs"). The Employee Benefit Programs are available to all full time Employees and their dependents, as well as, with respect to certain Employee Benefit Programs, former employees under COBRA (the "Eligible Employees" and, with respect to each program they participate in, the "Program Participants"). The Debtor seeks authority, in the exercise of its discretion, to pay prepetition claims (if applicable) associated with the Employee Benefit Programs in an amount no more than $30,000, to honor obligations, and to continue programs, in the ordinary course of business and consistent with past practice, relating to the Employee Benefits Programs, subject to the Debtor's rights, if any, to modify or discontinue any Employee Benefit Programs to reduce applicable costs or the benefits provided thereunder. The Employee Benefit Programs are described below.

**I. Health Care Plans**

28. Eligible Employees can participate in Employee Benefit Programs providing medical insurance coverage (the "Medical Plans"), dental insurance coverage (the "Dental

Plans"), and vision insurance coverage (the "Vision Plans" and, collectively, the "Health Care Plans"). In each case, participating Employees can elect that their contributions, up to certain limits, be made on a pre-tax basis.

29. The Medical Plans are provided and administered by United Healthcare ("United Healthcare") and Kaiser Permanente ("Kaiser"). The monthly premium owed by the Debtor is $25,000, which is due on the first day of every month, and covers services for that month. The Debtor has paid all monthly premiums through May 31, 2017, but has not paid for coverage for June 2017. The participating Employees are responsible for a portion of the costs, depending on their coverage, which automatically is deducted from their pay by ADP (which serves to reimburse the Debtor's for paying the entire premium).

30. The Dental and Vision Plans are provided and administered by Delta Dental and VSP. The monthly premium owed by the Debtor is $2,500, which is due on the first of every month. The Debtor has paid all monthly premiums through May 31, 2017, but has not paid for coverage for June 2017. The participating Employees are responsible for a portion of the costs, depending on their coverage, which is automatically withdrawn from their pay by ADP.

31. The Employer portion of the monthly costs for Medical, Dental, Vision, Disability and Life Insurance typically is $24,000.

32. If the Employees terminated prior to the Petition Date elect to continue benefits coverage through COBRA, such coverage will be administered by Basic Pacific Employees at no cost to the Debtor.

J.      **Insurance Plans and Disability Plans**

33. The Debtor offers full time Employees life insurance in the amount of their annual salary (with a cap of $225,000), long term disability and short term disability. These

additional benefits are provided through Lincoln Financial Group. The monthly premiums are $1,000 per month and are paid directly by the Debtor. The Debtor has paid all monthly premiums through May 31, 2017, but has not paid for coverage for June 2017.

**K.**     **Health Care Flexible Spending Programs**

34.     The Debtor offers all full time Employees the ability to contribute a portion of their pre-tax compensation to pay for certain health care expenses through a program (the "Voluntary Flexible Spending Program") managed by WageWorks. Pursuant to the Voluntary Flexible Spending Program, the Debtor withholds funds from Employees' pre-tax payroll, with maximum annual contributions of $2,600. As soon as an Employee makes the election, the entire amount is available to them, even though they pay for it on a *pro rata* basis per pay period. Currently, six (6) Employees participate in the Voluntary Flexible Spending Program. The Debtor pays WageWorks approximately $300 per month in administrative fees related to FSA Healthcare, FSA Dependent Care and Transit) the Voluntary Flexible Spending Program. As of the Petition Date, if the Employees withdrew the entire amount of their Flexible Spending Accounts, the Debtor would owe approximately $6,700 for amounts Employees elected to contribute to the Voluntary Flexible Spending Program but that have not yet been deducted from their pay.

**L.**     **FSA Dependent Care Account**

35.     The Debtor also offers dependent care accounts (the "Dependent Care Accounts") that are administered through WageWorks. Currently, two (2) Employees participate. The Dependent Care Accounts are fully funded by the Employees and Employees can never receive more than they funded. The Employee submits receipts, which are then processed, reviewed and approved by WageWorks.

## M.    FSA Commuter Account

36.    The Debtor also offers FSA commuter accounts (the "Commuter Accounts") that are administered through WageWorks.   Currently, three (3) Employees participate.   The Commuter Accounts are fully funded by the Employees and Employees can never receive more than they funded. The Employee submits receipts, which are then processed, reviewed and approved by WageWorks.

## N.    401(k) Savings Plan

37.    The Debtor maintains a retirement savings plan (the "401(k) Plan") for the benefit of their Employees that satisfies the requirements of section 401(k) of title 26 of the United States Code (the "Internal Revenue Code").   The 401(k) Plan is administered by Ascensus, Inc. ("Ascensus") and allows for automatic pre-tax salary deductions of eligible compensation up to the limits set forth by the Internal Revenue Code.

38.    All Employee contributions are withheld from their pay and then transmitted to Ascensus by the Debtor.   As of the date hereof, the aggregate amount of employee contributions that are due is an amount no greater than $9,200 (the "401(k) Contributions").   The Debtor is seeking authority to pay the 401(k) Contributions in the ordinary course of business.

39.    Ascensus charges the Debtor $1,110 per quarter for administration fees. The Debtor has paid all administration fees through December 31, 2016.   2017 administration fees have not yet been invoiced.   The Debtor anticipates that as of the Petition Date approximately $2,000 in prepetition administration fees have accrued but not yet been paid (the "401k Administration Fees"), and seeks authority to pay that amount.

40.    The Debtor anticipates filing a motion to terminate the 401(k) Plan.

**O.**     **Other Employee Programs**

41.     In addition to the foregoing, the Debtor has certain other practices, programs, and policies that provide benefits to its Employees, including, but not limited to, military leave program and leave pursuant to the Family Medical Leave Act, Business Travel Accident (annual cost less than $5,000 (collectively, the "Other Employee Programs"). The Debtor intends to continue and honor such practices, programs, and policies after the Petition Date, as such practices, programs, and policies may be modified, amended, or supplemented from time to time in the ordinary course of the Debtor's operations.

## BASIS FOR RELIEF REQUESTED

**I.**     **The Proposed Payments are Afforded**
        **Priority Under Section 507(a) of the Bankruptcy Code**

42.     Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the Debtor's Employees' claims for "wages, salaries, or commission, including PTO, and severance and sick leave pay" earned within 180 days before the Petition Date, and claims against the Debtor for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are afforded unsecured priority status in an amount not to exceed $12,850 per employee. 11 U.S.C. §§ 507(a)(4) and 507(a)(5). The same holds true for the payment of the payroll taxes, as the relevant taxing authorities generally would hold priority claims under section 507(a)(8) of the Bankruptcy Code for such obligations and their payment will therefore not prejudice other creditors of the Debtor. *See* 11 U.S.C. § 507(a)(8).[4] Thus, payment of the Employee Obligations merely expedites the treatment afforded to such claims and is consistent with the priority scheme of the Bankruptcy Code.

{00020469.2 }

43. To the extent that the amounts owed for Employee Obligations are under the statutory caps set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the Debtor submits there is sufficient justification to pay these amounts now to minimize any disruptions to employee morale and the Debtor's operations. Additionally, the Debtor submits that, to extent any amount is over the statutory caps set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the doctrine of necessity (described below) supports payment of these amounts to minimize any disruptions to employee morale and the Debtor's operations.

## II. The Proposed Payments are Appropriate Under Section 363 of the Bankruptcy Code

44. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

45. Under section 363(b) of the Bankruptcy Code, a court should authorize non-ordinary course business transactions where the debtor has articulated a valid business justification for the requested use of estate assets. *See In re Bethlehem Steel Corp.*, Case No. 02 Civ. 2854, 2003 WL 21738964 at *10 (S.D.N.Y. July 28, 2003) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

46. While payment of Employee Obligations is part of the ordinary course of business of the Debtor, to the extent it is not in the ordinary course, the Debtor submits that such payments are appropriate in this case. The prepetition Employee Obligations will preserve and

---

[4] Section 507(a)(8) of the Bankruptcy Code affords priority to, among other things, unsecured claims of governmental units for (i) taxes required to be collected or withheld and for which the debtor is liable in whatever capacity (§ 507(a)(8)(C)) and (ii)

protect the value of the Debtor's business, retain current employees and maintain positive employee morale at this critical juncture.  These reasons are more than sufficient business justification and support the Debtor's request to pay the prepetition Employee Obligations.

### III. Payment of the Employee Obligations Should be Authorized Under Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity

47.     Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

48.     The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts' power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  *See* 2 COLLIER ON BANKRUPTCY ¶ 105.01 (16th ed. rev. 2009).  The relief requested herein is essential to the Debtor's reorganization efforts and does not pose a burden on the Debtor's creditors.

49.     The Debtor believes that most of the prepetition Employee Obligations constitute priority claims or are obligations that arise in the ordinary course of business post-petition. Payment of such amounts at this time is critical to preserve and protect the value of the Debtor's business, retain current employees and maintain positive employee morale at this critical juncture.  Furthermore, to the extent any employee is owed in excess of $12,850 on account of the prepetition Employee Obligations, payment of such amounts is as critical as the payments that fall under the statutory caps and should be authorized under section 105(a) of the

---

under certain circumstances, employment taxes on wages, salaries, or commissions (§ 507(a)(8)(D)).

Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs, Inc.*, 98 B.R. at 176; *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment). This doctrine is consistent with the paramount goal of chapter 11 of "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims when payment is essential to continued operation of the debtor, such as where there is a "possibility that the creditor will employ an immediate economic sanction, failing such payment").

50.     Accordingly, the "necessity of payment" doctrine authorizes the Debtor to pay the amounts it seeks authority to pay pursuant to this Motion. *See In re CEI Roofing, Inc.*, 315 B.R. 50, 61 (Bankr. N.D. Tex. 2004) ("[T]here has evolved a rule for the payment of prepetition wages and benefits which is based on both common sense and the express provisions of the Bankruptcy Code. If employees are not paid, they will leave."); *In re Gulf Air, Inc.*, 112 B.R. 152, 154 (Bankr. W.D. La. 1989) ("[The] retention of skills, organization, and reputation for performance must be considered valuable assets contributing to going concern value and aiding rehabilitation where that is possible.").

51.     The relief requested in this Motion is an appropriate exercise of the Debtor's business judgment under sections 363(b) and 105(a) of the Bankruptcy Code. Continued payment, without interruption, of the Employee Obligations and the continued funding, without interruption, of the compensation and benefits plans, policies, programs, and practices attendant

to the Employee Obligations as described in this motion are vital to the Debtor's business and will ensure a smooth transition into chapter 11 and enhance the success of this case.

52.     If the relief requested in this motion is not granted, the Debtor's business operations will suffer to the detriment of the Debtor's estate, creditors, and other stakeholders. The Debtor believes that any delay in paying the prepetition Employee Obligations will adversely impact the Debtor's relationship with Employees and will irreparably impair Employees' morale, dedication, confidence, and cooperation. Employee support for the Debtor's reorganization efforts is critical to the success of those efforts. At this early stage, the Debtor simply cannot risk the substantial damage to its business that would inevitably attend any decline in Employees' morale attributable to Debtor's failure to pay wages, salaries, benefits and other similar items.

53.     Absent an order granting the relief requested by this Motion, the Employees will suffer undue hardship and, in many instances, serious financial difficulties, because the amounts in question are needed to enable certain of the Employees to meet their own personal financial obligations. For example, denial of continuation of health benefit coverage will unnecessarily burden sick Employees with a potential loss of coverage or reimbursement. Further, without the requested relief, the stability of the Debtor will be undermined, perhaps irreparably, by the possibility that otherwise loyal Employees will seek other employment opportunities with employers whose ability to offer competitive compensation and benefit programs has not been hindered.

54.     Based on the foregoing considerations, courts in this district and elsewhere have routinely approved payment of prepetition claims for compensation, benefits and expense reimbursements. *See*, *e.g*., *In re Swift Energy Co.*, Case No. 15-12670 (MFW) (Bankr. D. Del.

Jan. 5, 2016) (D.I. 58); *In re Offshore Grp. Inv. Ltd.*, Case No. 15-12422 (BLS) (Bankr. D. Del. Dec. 4, 2015) (D.I. 46); *In re Samson Res. Corp.*, Case No. 15-11934 (CSS) (Bankr. D. Del. Sept. 22, 2015) (D.I. 86).

55.     Accordingly, pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code, the Debtor should be authorized to pay prepetition Employee Obligations and Employee Obligations that become due and owing during the pendency of this case and to continue its practices, programs and policies with respect to the Employees, as such practices, programs and policies were in effect as of the Petition Date.

**IV.     The Relief Requested Is Supported By
         Section 541(d) of the Bankruptcy Code.**

56.     As part of the relief requested herein, the Debtor seeks authority to pay to the appropriate entities the deductions and the payroll taxes.  These amounts principally represent Employee earnings that governments, the Employees and judicial authorities have designated for deduction from the Employees' paychecks.

57.     Section 541(d) of the Bankruptcy Code provides that "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" becomes property of the debtor's estate only to the extent of the debtor's legal title therein.  11 U.S.C. § 541(d).  It is well established in this District that "property a debtor holds in trust for another is not property of the estate" within the meaning of section 541 of the Bankruptcy Code. *See Golden v. The Guardian* (*In re Lenox Healthcare, Inc.*), 343 B.R. 96, 100 (Bankr. D. Del 2006); *see also In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property which a debtor holds in trust – either express or constructive – for another does not become property of the estate when the debtor files for bankruptcy, and stating that "Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express

trust, but also funds held in constructive trust."); *EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 243 B.R. 231, 235 (Bankr. D. Del. 2000) (same).

58. More specifically, pursuant to section 541(d) of the Bankruptcy Code, taxes collected on behalf of taxing authorities are not property of the estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *see also Old Republic Nat'l Title Ins. Co. v. Tyler* (*In re Dameron*), 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.),* 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

59. Moreover, the Debtor and its officers are required by federal or state laws to make certain tax payments that have been withheld from their Employees' paychecks. 26 U.S.C. §§ 6672 and 7501(a); *see also Sharon Steel Corp.,* 41 F.3d at 95-97 (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld income taxes); *In re DuCharmes & Co.,* 852 F.2d 194, 196 (6th Cir. 1988) (noting individual officers of a company may be held personally liable for failure to pay trust fund taxes).

**V.    The Relief Requested is Supported by
       Sections 1107(a), 1108, and 363(c) of the Bankruptcy Code.**

60. The Debtor, operating its businesses as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate and

operating the business for the benefit of . . . creditors and (if the value justifies) equity owners."

*In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including operating business's going-concern value." *Id.*

61.     There are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate" and also when the payment was to "sole suppliers of a given product." *Id.* at 497-98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

62.     Payment of the Employee Obligations meets the test set forth in *CoServ*. As described above, the Debtor's Employees are essential to the business and operation of the Debtor. Without the cooperation of the Employees, the continued reliability and efficiency of the Debtor's ongoing operations pending reorganization would be impossible.

## VI.     Interim Relief Is Necessary to Avoid Immediate and Irreparable Harm

63.     Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days after the chapter 11 case's commencement to the extent

"relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate, as set forth in the Lee Declaration, and relief on an interim basis is therefore appropriate under Bankruptcy Rule 6003, if applicable. [HB NTD: motion only attaches one order]

64.     The urgency of the relief requested justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtor requests that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**VII.    Banks Should be Authorized to**
     **Honor Checks and Payment Requests.**

65.     The Debtor also requests that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment, and to honor all electronic payment requests made by the Debtor related to prepetition obligations described herein, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date.  The Debtor further requests that all such banks and financial institutions be authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved pursuant to this Motion.

**NOTICE**

66.     Notice of this motion has been given to (i) the United States Trustee for the District of Delaware, (ii) the Debtor's 20 largest unsecured creditors, (iii) counsel to the Pre-Petition Lender; (iv) Vangaurd, (v) United Healthcare; (vi) Kaiser; (vii) Delta Dental; (viii) Vision VSP; (ix) WageWorks; (x) ADP; and (xi) counsel to ESW Capital, LLC, as the proposed lender to the Debtor's post-petition financing facility (the "DIP Lender").  No trustee, examiner, or creditors' committee has been appointed in the Chapter 11 Case.  As this motion is seeking

"first day" relief, notice of this motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the relief requested, the Debtor submits that no other or further notice is necessary.

<u>**NO PRIOR REQUEST**</u>

67.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests entry of an interim and a final order granting the relief requested in its entirety and any other relief as this Court deems just and proper.

Respectfully submitted,

Dated: June 5, 2017
        Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

<u>*/s/ Scott J. Leonhardt*</u>
Frederick B. Rosner, Esq. (DE 3995)
Scott J. Leonhardt, Esq. (DE 4885)
Jason A. Gibson, Esq. (DE 6091)
824 Market Street, Suite 810
Wilmington, DE 19801
Phone: (302) 777-1111
rosner@teamrosner.com
leonhardt@teamrosner.com
gibson@teamrosner.com

*Proposed Counsel to the Debtor and Debtor in Possession*