**THIS IS NOT A SOLICITATION OF VOTES ON THE PLAN. VOTES MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED A DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FIRSTRAIN, INC., | Case No. 17-[          ] |
| Debtor. | |

### DISCLOSURE STATEMENT FOR THE
### PLAN OF REORGANIZATION OF FIRSTRAIN, INC.

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com

*Proposed Counsel to the Debtor and Debtor In Possession*

## DISCLAIMERS

**This Disclosure Statement provides information regarding the Plan of Reorganization of FirstRain, Inc. that the Debtor is seeking to have confirmed by the Bankruptcy Court. The information contained in this Disclosure Statement is included for purposes of soliciting acceptances to, and confirmation of, the Plan and may not be relied on for any other purpose. Approval of this Disclosure Statement does not constitute a determination or recommendation by the Bankruptcy Court as to the fairness or the merits of the Plan.**

**This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain documents relating to the Plan, and certain financial information. Although the Debtor believes that these summaries are fair and accurate and provide adequate information with respect to the documents summarized, such summaries are qualified to the extent that they do not set forth the entire text of, or are inconsistent with, such documents.**

**Although the Debtor has made every effort to be accurate, the financial information contained herein has not been the subject of an audit or other review by an accounting firm. In the event of any conflict, inconsistency, or discrepancy between the terms and provisions in the Plan, this Disclosure Statement, the exhibits annexed to this Disclosure Statement, or the financial information incorporated herein or therein by reference, the Plan shall govern for all purposes. All holders of claims should read this disclosure statement and the Plan in their entirety before voting on the Plan.**

**The statements and financial information contained herein have been made as of the date hereof unless otherwise specified. Holders of claims and equity interests reviewing this Disclosure Statement should not infer at the time of such review that there have been no changes in the facts set forth herein. Although the Debtor has made an effort to disclose where changes in present circumstances could reasonably be expected to affect materially the recovery under the Plan, this Disclosure Statement is qualified to the extent certain events do occur.**

**IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of claims and equity interests are hereby notified that: (a) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of claims or equity interests for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing by the Plan proponents of the transactions or matters addressed herein; and (c) holders of claims and equity interests should seek advice based on their particular circumstances from an independent tax advisor.**

**This Disclosure Statement has been prepared in accordance with Section 1125 of the Bankruptcy Code and not necessarily in accordance with Federal or State securities laws or other non-bankruptcy law. This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission (the "SEC") or any Federal,**

State, local or foreign regulatory agency, nor has the SEC or any other such agency passed upon the accuracy or adequacy of the statements contained in this Disclosure Statement. Persons or entities holding or trading in, or otherwise purchasing, selling, or transferring, securities of or claims against the Debtor should evaluate this Disclosure Statement and the Plan in light of the purpose for which they were prepared.

The Debtor makes statements in this Disclosure Statement that are considered forward-looking statements under the Federal securities laws.  Statements concerning these and other matters are not guarantees of the Debtor's future performance.  Such forward-looking statements represent the Debtor's estimates and assumptions only as of the date such statements were made and involve known and unknown risks, uncertainties, and other unknown factors that could impact the Debtor's restructuring plans or cause the actual results of the Debtor's business to be materially different from the historical results or from any future results expressed or implied by such forward-looking statements.  In addition to statements that explicitly describe such risks and uncertainties, readers are urged to consider statements labeled with the terms "believes," "belief," "expects," "intends," "anticipates," "plans," or similar terms to be uncertain and forward-looking. There can be no assurance that the restructuring transaction described herein will be consummated.  Creditors and other interested parties should see the section of this Disclosure Statement entitled "Risk Factors" for a discussion of certain factors that may affect the future financial performance of the Reorganized Debtor.

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ....................................................................................................... 1

   A.  Overview of the Plan ........................................................................................ 1

      1.  General Structure of the Plan ................................................................ 1

      2.  Material Terms of the Plan .................................................................... 2

      3.  Summary of Treatment of Claims and Equity Interests Under the
          Plan ....................................................................................................... 4

   B.  Plan Voting Instructions and Procedures ........................................................ 5

      1.  Voting Rights ........................................................................................ 5

      2.  Solicitation Materials ........................................................................... 5

      3.  Voting Instructions ............................................................................... 6

      4.  Confirmation Hearing and Deadline for Objections to
          Confirmation ......................................................................................... 9

II.  GENERAL INFORMATION ABOUT THE DEBTOR ........................................... 9

   A.  Background ....................................................................................................... 9

   B.  Non-Debtor Affiliate ..................................................................................... 10

   C.  Prepetition Capital Structure ........................................................................ 10

      1.  Pre-Petition Obligations .................................................................... 10

      2.  Unsecured Debt ................................................................................... 11

      3.  Equity Interests ................................................................................... 11

      4.  Tax Attributes ..................................................................................... 11

   D.  Events Leading to the Filing of the Bankruptcy Case ................................... 11

   E.  ESW Offer ...................................................................................................... 11

   F.  Pre-Petition Settlement of Atlas Claim ......................................................... 12

III.  THE DEBTOR'S BANKRUPTCY CASE ............................................................. 12

   A.  Commencement of the Chapter 11 Case ........................................................ 12

   B.  Restructuring Support Agreement ................................................................. 12

   C.  The DIP Financing ......................................................................................... 12

   D.  Schedules, Statements of Financial Affairs and Claims Bar Dates ............... 13

   E.  Additional Orders ........................................................................................... 13

IV.  SUMMARY OF THE CHAPTER 11 PLAN ......................................................... 14

A.    Treatment of Unclassified Claims ........................................................ 14

    1.    Administrative Claims ................................................................ 14

    2.    Bar Date For Administrative Claims ......................................... 16

    3.    Allowed Priority Tax Claims ..................................................... 17

B.    Classification and Treatment of Claims and Equity Interests............... 17

    1.    Class 1:  Priority Unsecured Non-Tax Claims........................... 17

    2.    Class 2: Pre-Petition Lender Secured Claim.............................. 18

    3.    Class 3:  Other Secured Claims ................................................. 18

    4.    Class 4:  General Unsecured Claims.......................................... 18

    5.    Class 5: Intercompany Claims ................................................... 19

    6.    Class 6:  Equity Interests........................................................... 19

C.    Acceptance or Rejection of the Plan ................................................... 19

    1.    Impaired Classes Entitled to Vote............................................. 19

    2.    Acceptance by Class 2, 3, 4, and 5 ........................................... 19

    3.    Presumed Acceptances by Class 1 ............................................ 19

    4.    Deemed Rejection by Class 6 .................................................... 19

D.    Means for Implementation of the Plan................................................. 20

    1.    Continued Corporate Existence ................................................ 20

    2.    Management and Board of Directors ......................................... 20

    3.    Arrangements with the Distribution Trustee.............................. 20

    4.    The Closing................................................................................ 20

    5.    Tax Treatment of the Distribution Trust ................................... 22

    6.    Preservation of Rights of Action............................................... 23

    7.    Vesting of Property in Reorganized Debtor............................... 23

    8.    Tax Exemption........................................................................... 24

    9.    No Successor Liability ............................................................... 24

E.    Treatment of Executory Contracts and Unexpired Leases ................. 24

    1.    Assumption of Executory Contracts ......................................... 24

    2.    Rejection of Executory Contracts ............................................. 24

    3.    Procedures Related to Assumption of Executory Contracts .................. 25

    4.    Rejection Claim Bar Date .......................................................... 27

    5.    Indemnification Obligations ...................................................... 27

F.    Provisions Governing Distributions of Property.................................. 27

|  |  | 1. | Distributions Procedures Regarding Allowed Claims | 27 |
|  |  | 2. | Procedures Regarding Distributions from the Distribution Trust | 29 |
|  | G. | | Procedures for Resolution of Disputed Claims | 29 |
|  |  | 1. | Right to Object to Claims | 29 |
|  |  | 2. | Deadline for Objecting to Claims | 30 |
|  |  | 3. | Deadline for Responding to Claim Objections | 30 |
|  |  | 4. | Right to Request Estimation of Claims | 30 |
|  | H. | | Injunctions, Releases, and Discharge | 30 |
|  |  | 1. | Discharge and Release | 30 |
|  |  | 2. | Discharge Injunction | 31 |
|  |  | 3. | Exculpation and Limitation of Liability | 31 |
|  |  | 4. | Releases by the Debtor | 32 |
|  |  | 5. | Releases by Third Party | 32 |
|  | I. | | Conditions to Confirmation and Effectiveness | 33 |
|  |  | 1. | Conditions to Confirmation | 33 |
|  |  | 2. | Conditions to Effectiveness | 33 |
|  | J. | | Modification, Revocation or Withdrawal of the Plan | 34 |
|  |  | 1. | Defects, Omissions, and Amendments of the Plan | 34 |
|  |  | 2. | Withdrawal of the Plan | 34 |
|  | K. | | Retention of Jurisdiction | 34 |
|  |  | 1. | Bankruptcy Court Jurisdiction | 34 |
|  |  | 2. | Limitations on Jurisdiction | 36 |
| V. | | | POST-EFFECTIVE DATE OPERATIONAL/FINANCIAL INFORMATION | 36 |
| VI. | | | RISK FACTORS | 37 |
|  | A. | | Risks Related to Bankruptcy | 37 |
|  |  | 1. | Parties May Object to the Plan's Classification of Claims and Equity Interests | 37 |
|  |  | 2. | The Debtor May Not Be Able to Obtain Confirmation of the Plan | 37 |
|  |  | 3. | The Conditions Precedent to the Effective Date of the Plan May Not Occur | 37 |
|  |  | 4. | Risks Associated with Proving and Collecting Claims Asserted in Litigation | 37 |
|  |  | 5. | Allowed Claims May Exceed Estimates | 38 |

|     | B.   | Risks Related to Financial Information ................................................................. 38 |
| VII. |     | CONFIRMATION OF THE PLAN .......................................................................... 38 |
|     | A.   | The Confirmation Hearing ..................................................................................... 38 |
|     | B.   | Requirements for Confirmation of the Plan ........................................................... 39 |
|     | C.   | Best Interests of Creditors / Liquidation Analysis ............................................... 40 |
|     | D.   | Feasibility ............................................................................................................. 40 |
|     | E.   | Acceptance by Impaired Classes ........................................................................... 41 |
|     | F.   | Confirmation Without Acceptance by All Impaired Classes ............................... 41 |
|     |      | 1.   No Unfair Discrimination ........................................................................... 41 |
|     |      | 2.   Fair and Equitable Test .............................................................................. 42 |
| VIII. |    | TAX CONSEQUENCES OF THE PLAN ............................................................... 42 |
| IX.  |     | CERTAIN SECURITIES LAW MATTERS ........................................................... 42 |
|     | A.   | In General .............................................................................................................. 42 |
|     | B.   | Distribution Trust Related Matters ....................................................................... 42 |
|     |      | 1.   Initial Issuance of Beneficial Interests ...................................................... 42 |
|     |      | 2.   Resales ......................................................................................................... 43 |
|     |      | 3.   Exchange Act Compliance .......................................................................... 44 |
|     |      | 4.   Compliance if Required .............................................................................. 44 |
| X.   |     | RECOMMENDATION .......................................................................................... 45 |

## <u>EXHIBITS</u>

EXHIBIT A    Plan of Reorganization

EXHIBIT B    Liquidation Analysis

---

**THE DEBTOR HEREBY ADOPTS AND INCORPORATE EACH EXHIBIT
ATTACHED TO THIS DISCLOSURE STATEMENT
BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN**

## I.    **INTRODUCTION**

FirstRain, Inc. (the "<u>Debtor</u>") hereby submits this disclosure statement (the "<u>Disclosure Statement</u>") pursuant to sections 1125 and 1126(b) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), in connection with the solicitation of votes on the *Plan of Reorganization of FirstRain, Inc.,* dated June 5, 2017 (as amended, supplemented or otherwise modified from time to time pursuant to its terms, the "<u>Plan</u>").  A copy of the Plan is attached hereto as **<u>Exhibit A</u>**.[1]

The purpose of this Disclosure Statement is to enable Creditors whose Claims are Impaired under the Plan and who are entitled to vote to make an informed decision in exercising their right to accept or reject the Plan.  This Disclosure Statement sets forth certain information regarding the Debtor's prepetition operating and financial history, its reasons for seeking protection under the Bankruptcy Code and the anticipated organization, operations, and financing of the Debtor upon its successful emergence from bankruptcy protection.  This Disclosure Statement also describes certain terms and provisions of the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the Plan, the business of the Debtor or Reorganized Debtor, and the securities that may be issued under the Plan, including the issuance of New Equity to ESW Capital, LLC ("<u>ESW</u>"), as the Plan Sponsor and the DIP Lender, and the manner in which Distributions will be made under the Plan.  In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

### A.    Overview of the Plan

#### 1.    General Structure of the Plan

Generally, the Plan provides for the reorganization of the Debtor by retiring, cancelling, extinguishing and/or discharging the Debtor's existing Equity Interests and issuing New Equity in the Reorganized Debtor to the Plan Sponsor and, to the extent it exercises the Subscription Option, to the DIP Lender.  ESW is an entity unaffiliated with the Debtor.  In exchange, the Plan Sponsor, has agreed to provide Consideration which will ultimately be distributed to holders of Allowed Claims in accordance with the priority scheme established by the Bankruptcy Code, or as otherwise agreed by the Pacific Western Bank, as successor by merger to Square 1 Bank (the "<u>Pre-Petition Lender</u>") pursuant to the Restructuring Support Agreement (the "<u>RSA</u>") (as described below).  It is anticipated that holders of Allowed Administrative Claims, and Allowed Priority Tax Claims will be paid in full under the Plan.  As agreed by the Pre-Petition Lender under the RSA, holders of  Allowed General Unsecured Claims will be paid in full prior to payment of the Pre-Petition Lender's secured claim (the "<u>Guaranteed Unsecured Recovery</u>"). As set forth more fully below, it is anticipated that Holders of Allowed General Unsecured Claims will receive payment in full, provided however, that no payment will be made on account of any post-petition interest with respect to any Allowed General Unsecured Claims. Further, the Pre-

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.  The summary of the Plan provided herein is qualified in its entirety by reference to the Plan.  In the case of any inconsistency between the summary herein and the Plan, the Plan shall govern.

Petition Lender will receive a distribution from the remaining Consideration up to the full amount of its Allowed Pre-Petition Lender Secured Claim.

In order to fund the Chapter 11 Case, the DIP Lender has loaned funds to the Debtor under the DIP Facility. The Allowed DIP Lender Claim will be satisfied through (a) the exercise of the Subscription Option,[2] and (b) payment of the remaining amount of the Allowed DIP Lender Claim through the Consideration provided by the Plan Sponsor, after and/or to the extent of the exercise of the Subscription Option.

The Consideration will be used to satisfy in full all Allowed Administrative Claims, Allowed Other Secured Claims, Allowed Priority Tax Claims and Allowed Priority Unsecured Non-Tax Claims, consistent with section 1129 of the Bankruptcy Code.

Finally, the Plan provides that Equity Interests in the Debtor will be cancelled, released and extinguished.

**THE DEBTOR BELIEVES THAT THE PLAN IS FAIR AND EQUITABLE, WILL MAXIMIZE THE VALUE TO THE ESTATE, IS IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE AND ITS STAKEHOLDERS, AND WILL ENABLE THE DEBTOR TO SUCCESSFULLY REORGANIZE AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11.**

**FOR THESE REASONS, THE DEBTOR URGES HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE TO TIMELY RETURN THEIR BALLOTS AND TO VOTE TO ACCEPT THE PLAN.**

### 2. Material Terms of the Plan

The following is an overview of certain material terms of the Plan:

▪ The Debtor will be reorganized pursuant to the Plan and continue in operation following the Effective Date of the Plan. To the extent the DIP Lender exercises the Subscription Option, the DIP Lender, will receive New Equity of the Reorganized Debtor. In exchange for payment of the Consideration of $7,500,000, plus the Redesignation Consideration (if any), less the amount exercised under the Subscription Option, the Plan Sponsor will receive the remainder of the New Equity of the Reorganized Debtor. The sum of New Equity received by the Plan Sponsor and the DIP Lender will equal 100% of the New Equity of the Reorganized Debtor.

▪ Except with regards to the Ordinary Course Liabilities, the treatment of which is described below, all Allowed Administrative Claims, Allowed Pre-Petition Lender Secured Claim, Allowed Other Secured Claim, Allowed Priority Tax Claims, Allowed Priority Unsecured Non-Tax Claims, will be paid from the

---

[2] The Plan Sponsor reserves the right to modify the Subscription Option, provided that (i) no such modification shall adversely impact the Plan treatment of other creditors and (ii) such modification is approved by the DIP Lender.

Consideration or otherwise satisfied in full as required by the Bankruptcy Code, unless otherwise agreed to by the Debtor, the Plan Sponsor and the holders of such Claims.

- On the Effective Date, the DIP Lender Claim will be Allowed in full. The Allowed DIP Lender Claim shall be satisfied as follows pursuant to the Subscription Option. The DIP Lender shall have the option, on account of being the holder of the Allowed DIP Lender Claim, to exchange a total of up to 100% in satisfaction of such amount of the Allowed DIP Lender Claim for up to a total of 60% of the New Equity, at a rate of 1% of its Allowed DIP Lender Claim for .6% of the New Equity. Further, the DIP Lender, on account of being the holder of the Allowed DIP Lender Claim, shall receive from the Consideration, payment in Cash of the remaining amount of the Allowed DIP Lender Claim (if any) after the DIP Lender has exercised the Subscription Option to receive its share of the New Equity. In any scenario, as of the Effective Date, ESW will own 100% of the New Equity of the Reorganized Debtor, in its capacity as the Plan Sponsor, and possibly in its capacity as the DIP Lender.

- The Debtor shall continue to pay each Ordinary Course Liability, accrued prior to the Effective Date, pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability, and the Approved Budget. The Reorganized Debtor shall continue to pay each Ordinary Course Liability accrued after the Effective Date, pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability.

- The holder of the Allowed Pre-Petition Lender Secured Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, the Allowed Pre-Petition Lender Secured Claim the Secured Lender Recovery up to the full amount of the Allowed Pre-Petition Lender Secured Claim.

- Each holder of an Allowed General Unsecured Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for its Allowed General Unsecured Claim, its Pro Rata Share of the Guaranteed Unsecured Recovery.  Holders of Allowed General Unsecured Claims shall not receive any Distribution on account of any post-petition interest.

- Each holder of an Allowed Intercompany Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for its Allowed Intercompany Claim, its Pro Rata Share of the Consideration remaining after payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Unsecured Non-Tax Claims, Allowed Pre-Petition Lender Secured Claim, Allowed Other Secured Claims, and Allowed General Unsecured Claims.

- All existing Equity Interests shall be deemed automatically cancelled, released,

and extinguished without further action by the Debtor or the Reorganized Debtor. Holders of Equity Interests will not receive any Distribution on account of their Equity Interest.

**3.    Summary of Treatment of Claims and Equity Interests Under the Plan**

The table below summarizes the classification and treatment of the Claims and Equity Interests under the Plan.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE.  FOR A COMPLETE DESCRIPTION OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN.**

| Class | Claim or Equity Interest | Summary of Treatment | Estimated Aggregate Amount of Claims[3] | Projected Recovery Under Plan |
|---|---|---|---|---|
| 1 | Priority Unsecured Non-Tax Claims | Unimpaired; Deemed to Accept Plan | $4,820 | 100% |
| 2 | Pre-Petition Lender Secured Claim | Impaired; Entitled to Vote on Plan | $5,542,292.50 | 90%-100% |
| 3 | Other Secured Claims[4] | Impaired; Entitled to Vote on Plan | $0 | 100% |
| 4 | General Unsecured Claims | Impaired; Entitled to Vote on Plan | $695,077 | 100% (but in all events exclusive of any post-petition interest) |
| 5 | Intercompany Claims | Impaired; Entitled to Vote on Plan | $1,200,000 | 0%-2% |
| 6 | Equity Interests | Impaired; Deemed to Reject | N/A | 0% |

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR HOLDERS OF CLAIMS AND THUS STRONGLY RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.**

---

[3] Estimated aggregate amount of claims in each class as well as projected recoveries for each class are based solely on the Debtor's understanding of the universe of the claims in each Class.  However, the claims bar date has not yet passed and the actual amount of claims and projected recoveries could vary significantly based upon the final pool of filed claims and any reconciliation thereof.  Nothing herein shall be construed to be an admission by the Debtor as to the extent, priority or validity of any claim.

[4] The Debtor is currently unaware of any Other Secured Claims but includes this class as a placeholder out of an abundance of caution.

4

B.     **Plan Voting Instructions and Procedures**

1.     **Voting Rights**

Under the Bankruptcy Code, only Classes of Claims that are "Impaired" and that are not deemed as a matter of law to have rejected a plan of reorganization under section 1126 of the Bankruptcy Code are entitled to vote to accept or reject the Plan.   Any Class that is "Unimpaired" is not entitled to vote to accept or reject a plan of reorganization and is conclusively presumed to have accepted the Plan.  As set forth in section 1124 of the Bankruptcy Code, a Class is "Impaired" if the legal, equitable, or contractual rights attaching to the claims or equity interests of that Class are modified or altered.

Pursuant to the Plan, Claims in Class 2 (Pre-Petition Lender Secured Claim), Class 3 (Other Secured Claims), Class 4 (General Unsecured Claims), and Class 5 (Intercompany Claims) are Impaired by, and entitled to receive a Distribution under the Plan, and only the holders of Claims in these Classes are entitled to vote to accept or reject the Plan.  Whether a holder of a Claim in Class 2, 3, 4, and 5 may vote to accept or reject the Plan will also depend on whether the holder held such Claim as of the Voting Record Date.

Pursuant to the Plan, Claims in Class 1 is Unimpaired by the Plan, and such holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

Pursuant to the Plan, Holders of Equity Interests in Class 6 will not receive any Distribution and are deemed to have rejected the Plan and are therefore not entitled to vote on the Plan.

2.     **Solicitation Materials**

The Debtor, with the approval of the Bankruptcy Court, has engaged JND Corporate Restructuring (the "Voting Agent") to serve as the voting agent to process and tabulate Ballots for each Class entitled to vote on the Plan and to generally oversee the voting process.   The following materials shall constitute the solicitation package (the "Solicitation Package"):

- This Disclosure Statement, including the Plan and all other Exhibits annexed thereto;

- The Bankruptcy Court order approving this Disclosure Statement (the "Disclosure Statement Order") on a conditional basis;

- The notice of, among other things, (i) the date, time, and place of the hearing to consider Confirmation of the Plan and related matters and (ii) the deadline for filing objections to Confirmation of the Plan and the Disclosure Statement (the "Confirmation Hearing Notice");

- One or more Ballots, as applicable, to be used in voting to accept or to reject the Plan and applicable instructions with respect thereto (the "Voting Instructions");

▪   A pre-addressed return envelope; and

▪   Such other materials as the Bankruptcy Court may direct or approve.

The Debtor, through the Voting Agent, will distribute the Solicitation Package in accordance with the Disclosure Statement Order.  The Solicitation Package is also available at the Voting Agent's website at www.jndla.com/cases/FirstRain.

No later than July 14, 2017, the Debtor intends to file a Plan Supplement which includes, among other things, (a) the identity of the Distribution Trustee, and (b) the Distribution Trust Agreement.  As the Plan Supplement is updated or otherwise modified, such modified or updated documents will be made available on the Voting Agent's website at www.jndla.com/cases/FirstRain.

If you are the holder of a Claim and believe that you are entitled to vote on the Plan, but you did not receive a Ballot or your Ballot is damaged or illegible, or if you have any questions concerning voting procedures, you should contact the Voting Agent by writing to FirstRain, Inc., Ballot Processing, c/o JND Corporate Restructuring, 8269 E. 23rd Avenue, Suite 275, Denver, CO 80238 or by telephone at 855-812-6112 or via email at FirstRainInfo@JNDLA.com.  If the reason that you did not receive a Ballot is because your Claim is subject to a pending claim objection or otherwise has been designated as a Disputed Claim and you wish to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018 with the Bankruptcy Court for the temporary allowance of your Claim for voting purposes by [July __, 2017], or you will not be entitled to vote to accept or reject the Plan.

**THE DEBTOR, THEDISTRIBUTION TRUST, AND THE PRE-PETITION LENDER, AS AND IF APPLICABLE, RESERVE THE RIGHT THROUGH THE CLAIM OBJECTION PROCESS, TO OBJECT TO OR SEEK TO DISALLOW ANY CLAIM OR EQUITY INTEREST FOR DISTRIBUTION PURPOSES.**

### 3.    Voting Instructions

All votes to accept or reject the Plan must be cast by using the Ballots enclosed with the Solicitation Packages.  No votes other than ones using such Ballots will be counted, except to the extent the Bankruptcy Court orders otherwise.  The Bankruptcy Court has fixed the Voting Record Date for the determination of the holders of Claims who are entitled to (a) receive a copy of this Disclosure Statement and all of the related materials and (b) vote to accept or reject the Plan.  The Voting Record Date and all of the Debtor's solicitation and voting procedures shall apply to all of the Debtor's Creditors and other parties in interest.

After carefully reviewing the Plan, this Disclosure Statement, and the detailed instructions accompanying your Ballot, you are asked to indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the accompanying Ballot.

**The deadline to vote on the Plan is July 21, 2017 (Eastern Time) (the "Voting Deadline").**  In order for your vote to be counted, your Ballot must be properly completed in accordance with the Voting Instructions on the Ballot, and **received** no later than the Voting Deadline at the address set forth below:

FirstRain Ballot Processing
c/o JND Corporate Restructuring
8269 E. 23rd Avenue, Suite 275
Denver, CO 80238

Only the Holders of Claims in Class 2, 3, 4, and 5 as of the Voting Record Date are entitled to vote to accept or reject the Plan, and they may do so by completing the appropriate Ballots and returning them in the envelope provided by the Voting Agent so as to be actually received by the Voting Agent by the Voting Deadline or by voting on the Voting Agent's website by the Voting Deadline. Each holder of a Claim must vote its entire Claim within a particular Class either to accept or reject the Plan and may not split such votes. If multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last timely received, properly executed Ballot will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot. The Ballots will clearly indicate the appropriate return address. It is important to follow the specific instructions provided on each Ballot and/or on the Voting Agent's website.

Unless otherwise provided in the Voting Instructions accompanying the Ballots and/or on the Voting Agent's website or otherwise ordered by the Bankruptcy Court, the following Ballots will not be counted in determining whether the Plan has been accepted or rejected:

- Any Ballot that fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection, of the Plan;

- Any Ballot received after the Voting Deadline, except if the Debtor has granted an extension of the Voting Deadline with respect to such Ballot, or by order of the Bankruptcy Court;

- Any Ballot containing a vote that the Bankruptcy Court determines was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

- Any Ballot that is illegible or contains insufficient information to permit the identification of the Claim;

- Any Ballot cast by a Person or Entity that does not hold an Allowed Claim in a voting Class; and

- Any unsigned Ballot or Ballot without an original signature (or in the case of electronic balloting, a proper and verified electronic signature).

Any party who has previously submitted to the Voting Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. In the case where more than one timely, properly completed Ballot is received, only the Ballot that bears the latest date will be counted for purposes of determining whether the requisite acceptances have been received. Any party who has delivered a properly completed Ballot for the acceptance or rejection of the Plan that wishes to withdraw

such acceptance or rejection rather than changing its vote may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline.  To be valid, a notice of withdrawal must (i) contain the description of the Claims to which it relates and, in the case of Claims, the aggregate principal amount represented by such Claims, (ii) be signed by the withdrawing party in substantially the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claims and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be actually received by the Voting Agent prior to the Voting Deadline.

The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtor may, in its sole discretion, reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan.

**ALL BALLOTS ARE ACCOMPANIED BY VOTING INSTRUCTIONS.  IT IS IMPORTANT THAT THE HOLDER OF A CLAIM IN THE CLASSES ENTITLED TO VOTE FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED WITH EACH BALLOT.**

If you have any questions about (a) the procedure for voting your Claim, (b) the Solicitation Package that you have received, or (c) the amount of your Claim, or if you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)), an additional copy of the Plan, this Disclosure Statement, or any appendices or Exhibits to such documents, please contact the Voting Agent at the address specified above. Copies of the Plan, Disclosure Statement, and other documents filed in this Chapter 11 Case may be obtained free of charge on the Voting Agent's website at www.jnd.com/cases/FirstRain. Documents filed in this case may also be examined between the hours of 8:00 a.m. and 4:00 p.m., prevailing Eastern Time, Monday through Friday, at the Office of the Clerk of the Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

The Voting Agent will process and tabulate Ballots for the Classes entitled to vote to accept or reject the Plan and will file a voting report (the "Voting Report") as soon as reasonably practicable following the Voting Deadline.  The Voting Report will, among other things, describe every Ballot that does not conform to the Voting Instructions or that contains any form of irregularity, including, but not limited to, those Ballots that are late, illegible (in whole or in material part), unidentifiable, lacking signatures, lacking necessary information, or damaged.

**THE DEBTOR URGES HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE TO TIMELY RETURN THEIR BALLOTS AND TO VOTE TO ACCEPT THE PLAN BY THE VOTING DEADLINE.**

### 4. Confirmation Hearing and Deadline for Objections to Confirmation

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

**The Bankruptcy Court has scheduled the Confirmation Hearing to commence on [July ___, 2017] at [          ] (Eastern Time)**, before the Honorable [          ], United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, [   ] Floor, Wilmington, Delaware 19801. The Confirmation Hearing Notice, which sets forth the time and date of the Confirmation Hearing, has been included along with this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

**Objections to Confirmation of the Plan must be filed and served on the Debtor, the Plan Sponsor and certain other entities, all in accordance with the Confirmation Hearing Notice by no later than** [July ___, 2017 **at** [          ] **(Eastern Time).** Unless objections to Confirmation of the Plan are timely served and filed in compliance with the Disclosure Statement Order, which is attached to this Disclosure Statement, they may not be considered by the Bankruptcy Court.

## II. GENERAL INFORMATION ABOUT THE DEBTOR

### A. Background

The Debtor was founded in 2000, and is headquartered in San Mateo, California. It also leases space in New York City and leases a data center in Santa Clara, California. The space in New York City is fully sublet. It operates at a small financial deficit and serves no continuing business purpose. It is the Debtor's intention to reject both the lease and sublease as of the Effective Date of the Plan. The space in San Mateo is partially sub-let.

The Debtor is an enterprise software company, whose core Intellectual Property is in data science and software algorithms that can discover, read, discern and summarize useful insights about companies and markets from a vast universe of content across the global web and social media. The Debtor's customers are typically Fortune 1000 enterprises, whose sales and marketing teams use FirstRain to track their customers, competitors and markets in a very detailed and highly personalized way as part of their go to market and sales processes. The Debtor's analytics-driven applications, software and information services are licensed as a subscription service.

The Debtor has a very selectively developed patent portfolio of twelve (12) issued patents and one trademark that represent a critical intellectual property innovations within the platform and solution FirstRain has to offer. The Debtor's patents cover an important range of software, data science and analytics techniques spanning: discovery, crawl and extraction of unstructured data and web content; information processing techniques for relevance scoring, entity identification and deriving business lines of companies; and language processing and analytics for event identification and fact extraction. The Debtor's patents are core to its highly

differentiated data science capabilities and information quality, which is critical for meeting the enterprise-quality information standards of the Debtor's customer base.

### B.        Non-Debtor Affiliate

FirstRain has a wholly-owned subsidiary in India -- FirstRain Software Centre Private Limited -- that provides support and development services to FirstRain (its sole customer) on a cost plus basis pursuant to a Services Agreement, dated April 1, 2009 (the "FirstRain India Contract").   The FirstRain India Contract is being rejected as of the effective of the Plan. FirstRain owes its subsidiary the approximate amount of $1.2 million, which is being treated under the Plan as a Class 5 – Intercompany Claim.   After the effective date of the Plan, the Reorganized Debtor will own 100% of the outstanding equity in FirstRain India.

FirstRain India may file proofs of claim against the Debtor.   The Debtor reserves all right to review and object to any such claims and/or designate any such claims as Disputed Claims for purposes of voting on the Plan.   Any Allowed Claims of FirstRain India will be treated as Class 5 Intercompany Claims under the Plan.

### C.        Prepetition Capital Structure

#### 1.        Pre-Petition Obligations

On December 13, 2013, FirstRain and the Pre-Petition Lender entered into that Loan and Security Agreement (the "Credit Agreement") providing for a revolving credit limit in the aggregate principal amount not to exceed the *lesser* of $7,500,000 or an amount derived from a specific borrowing base formula.   To secure repayment of the obligations under the Credit Agreement, FirstRain granted Pre-Petition Lender a first lien upon and security interest in, *inter alia,* accounts receivable, inventory, equipment, deposit accounts, general intangibles, investment property and all of its Other Property (as defined in the Credit Agreement). Additionally, FirstRain maintains its bank accounts with the Pre-Petition Lender.  On June 15, 2014, FirstRain also entered into an Intellectual Property Security Agreement whereby it granted Pre-Petition Lender a security interest in certain intellectual property (including certain patents, trademarks and copyrights).

The Debtor's obligations under the Credit Agreement are matured and became due and payable on February 25, 2017.  Thereafter, the Debtor and the Pre-Petition Lender entered into a forbearance agreement.

Prior to the Petition Date, and pursuant to the RSA, the Debtor paid the Pre-Petition Lender the amount of $750,000.  Accordingly, as of the Petition Date, the amount due and owing under the Credit Agreement is   $5,542,292.50, which includes exposure under issued but undrawn letters of credit and the maximum availability under credit cards, plus attorney's fees (the "Pre-Petition Obligation").

### 2. Unsecured Debt

According to the Debtor's books and records, there is approximately $695,077 in general trade and other general unsecured debt, not including the secured claim referenced above.

### 3. Equity Interests

The Debtor is privately owned and has two classes of stock, Series A Preferred and Common (collectively, including options and warrants, the "Stock"). As of April 30, 2017, the number of shares issued and outstanding of Series A Preferred Stock was 41,297,666, and the number of shares issued and outstanding of Common Stock was 371,349. There are also 3,783 common stock warrants issued and outstanding. The Debtor has also 9,380,130 issued options outstanding and 3,165,387 options available for issuance; pursuant to its 2010 Equity Incentive Plan. These options can be converted into 12,545,517 shares of common stock. As of the Petition, those options outstanding had not been exercised.

### 4. Tax Attributes

The Debtor estimates that is possesses federal net operating loss carryforwards of approximately $110,000,000, which start to expire in the beginning of 2019.

### D. Events Leading to the Filing of the Bankruptcy Case

Despite relatively healthy operations, and significant improvements in the Debtor's profits and losses and strategic customer base, the Debtor was unable to refinance the Pre-Petition Lender's first lien secured obligation with a maturity date of February 28, 2017.

On April 27, 2015, the Debtor retained Atlas Technology Group, LLC ("ATG") to render the following professionals services: review the business, operations and financial condition of the Debtor, assist Debtor in identifying and evaluating candidates for a potential transaction and/or a financing, coordinate with the Debtor to prepare and implement a marketing plan for distribution to potential parties to a transaction or financing, advise Debtor regarding the desirability of effecting a transaction and/or financing, and advise and assist the Debtor in the course of negotiating with potential acquirers and managing associated due diligence process.

ATG ran a marketing process for two (2) years and advises that the ESW Offer (as defined below), reflected in the Plan, represents the highest, best and most viable offer received.

### E. ESW Offer

The Debtor continued its negotiations with ESW which resulted in ESW's offer (the "ESW Offer") to sponsor the Plan and provide the DIP Facility to fund the Chapter 11 Case and to facilitate the Debtor's emergence out of the Chapter 11 Case. Specifically, the Plan Sponsor agreed to provide Consideration which will ultimately be distributed to holders of Allowed Claims in accordance with the priority scheme established by the Bankruptcy Code or as otherwise agreed to the Pre-Petition Lender pursuant to the RSA.

11

### F.    Pre-Petition Settlement of Atlas Claim

Prior to the Petition Date, ATG contended it was owed over $1 million by the Debtor on account of its pre-petition marketing efforts and pursuant to an Engagement Letter.   The parties thereafter negotiated at arm's length and settled the ATG claim.   This settlement, *inter alia,* reduced ATG's claim to an Allowed General Unsecured Claim of $250,000.

## III.    THE DEBTOR'S BANKRUPTCY CASE

### A.    Commencement of the Chapter 11 Case

On June 5, 2017 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

### B.    Restructuring Support Agreement

After extensive marketing by ATG, the Plan Sponsor, the Pre-Petition Lender and the Debtor negotiated the terms of the RSA.   The RSA allowed the Pre-Petition Lender to sweep $750,000 of its cash collateral from the Debtor's account pre-petition but avoids a foreclosure on Debtor's assets that would be expected to provide only a partial recovery to Pre-Petition Lender and no recovery to unsecured creditors.   Under the RSA, the Pre-Petition Lender has agreed to subordinate the treatment of its secured claim by permitting Allowed General Unsecured Claims to be paid in full prior to payment if the Pre-Petition Lender Secured Claim.

On June ___, 2017, the Court entered the Order Granting the Debtor's Motion for an Order (A) Authorizing the Debtor to Enter into the Restructuring Support Agreement, and (B) Granting Related Relief [D.I. ___].

### C.    The DIP Financing

The Debtor, the DIP Lender and the Pre-Petition Lender negotiated a DIP Facility, providing the Debtor up to $4.0 million in DIP Financing (in accordance with an approved Budget), plus access to the Cash Collateral.   The DIP Facility provides sufficient financing to fund ordinary course working capital needs and administrative expenses to consummate the Plan and permit the Debtor to successfully emerge from bankruptcy.   Based on the expected emergence of the Debtor from the Chapter 11 Case on or before July 31, 2017, the Debtor and DIP Lender estimate that approximately $1.1 million will be budgeted and drawn under the DIP Facility.   The remainder of any undrawn portions of the DIP as of the Effective Date will be available as Consideration to fund creditor recoveries under the Plan.

- On the Petition Date, the Debtor filed the *Motion of Debtor for Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) and 507 of the Bankruptcy Code (I) Authorizing Debtor to (A) Obtain  Post-Petition Secured Financing from ESW Capital, LLC; (B) Utilize Cash Collateral; and (C) Pay Certain Related Fees and Charges; and*

- *(II) Granting Adequate Protection to the Pre-Petition Lender; and (III) Scheduling a Final Hearing* (Doc. No. [  ]) (the "<u>DIP Motion</u>").

- 

- On June [  ], 2017, the Court entered the *Interim Order Pursuant to Sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) and 507 of the Bankruptcy Code (I) Authorizing Debtor to (A) Obtain  Post-Petition Secured Financing from ESW Capital, LLC; (B) Utilize Cash Collateral; and (C) Pay Certain Related Fees and Charges; and (II) Granting Adequate Protection to the Pre-Petition Lender; and (III) Scheduling a Final Hearing* (Doc. No.      ] (the "<u>Interim DIP Order</u>").

- Pursuant to the Interim DIP Order, among other provisions, the Debtor was authorized to borrow, on an interim basis, up to $[  ] in accordance with the Budget provided for therein.

- On June [  ], 2017, the Court will consider approval of the *Final Order Pursuant to Sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) and 507 of the Bankruptcy Code (I) Authorizing Debtor to (A) Obtain  Post-Petition Secured Financing from ESW Capital, LLC; (B) Utilize Cash Collateral; and (C) Pay Certain Related Fees and Charges; and (II) Granting Adequate Protection to the Pre-Petition Lender* (the "<u>Proposed Final DIP Order</u>"; the Interim DIP Order and the Proposed Final DIP Order may also be referred to as the "<u>DIP Order</u>"). Pursuant to the Final DIP Order, the Debtor was authorized to enter into and draw upon the ESW Post-Petition Facility on a final basis in accordance with the Budget provided for therein.

### D.    Schedules, Statements of Financial Affairs and Claims Bar Dates

The Debtor will file the Schedules and Statement of Financial Affairs no later than June 19, 2017.

On June 5, 2017, the Debtor file the *Motion of the Debtor for Entry of an Order (I) Establishing Bar Dates and Procedures (II) Approving the Form and Manner of Notice Thereof* [D.I. __] (the "<u>Bar Date Motion</u>"). The Bar Date Motion seeks authority to set the deadline for Creditors and Governmental Units to file prepetition proofs of claim against the Debtor, including claims under section 503(b)(9) of the Bankruptcy Code, as _____.  The Bar Date Motion also seeks to set the deadline for Creditors and Governmental Units to file post-petition administrative claims against the Debtor (except Professional Fee Claims) as _____.    The Bankruptcy Court has not yet entered an order approving the Bar Date Motion (the "<u>Bar Date Order</u>").  Once approved, notice of the bar date, in a form approved by the Bankruptcy Court, will be served on all known creditors.

### E.    Additional Orders

On or after the Petition Date, the Debtor filed a number of motions and applications to retain professionals, to streamline the administration of the Chapter 11 Case, and to obtain other

relief in the best interest of the Debtor.  As of this writing, the Court has entered the following orders in the Chapter 11 Case:

- ▪ [Stock Trading Motion]

- ▪ [Motion to Terminate Debtor's 401k Plan]

## IV.     SUMMARY OF THE CHAPTER 11 PLAN

This section provides a summary of the structure and means for implementation of the Plan and the classification and treatment of Claims and Equity Interests under the Plan and is qualified in its entirety by reference to the Plan (as well as the Exhibits thereto and definitions therein).

The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statement of such terms and provisions.

The Plan itself and the documents referred to therein control the actual treatment of Claims against and Equity Interests in the Debtor under the Plan and will, upon the occurrence of the Effective Date, be binding upon all holders of Claims against and Equity Interests in the Debtor, the Debtor's Estate, the Reorganized Debtor, all parties receiving property under the Plan, and other parties in interest.  In the event of any conflict, inconsistency, or discrepancy between this Disclosure Statement and the Plan, the Plan Supplement, and/or any other operative document, the terms of the Plan, Plan Supplement, and/or such other operative document, as applicable, shall govern and control; provided that, in any event, the terms of the Plan shall govern and control over all other related documents.

### A.     Treatment of Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Compensation Claims and Ordinary Course Liabilities) and Priority Tax Claims have not been classified and the respective treatment of such unclassified Claims is set forth in Article IV of the Plan.

#### 1.     Administrative Claims

a.   General.  Except with regards to the Ordinary Course Liabilities (the treatment of which is described in Section 4.3 of the Plan), subject to the bar date provisions in the Plan, unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive, from the Consideration, Cash equal to the unpaid portion of such Allowed Administrative Claim within ten (10) days after the later of (a) the Effective Date, (b) the Allowance Date, or (c) such other date as is mutually agreed upon by the Debtor, the Plan Sponsor and the holder of such Claim.

14

b. <u>Ordinary Course Liabilities.</u> All Ordinary Course Liabilities are deemed to be Allowed Claims to the extent set forth in the Approved Budget.  Except as set forth in Section 4.3(b) of the Plan, holders of Administrative Claims on account of Ordinary Course Liabilities are not required to file or serve any request for payment of the Ordinary Course Liability.  The Debtor shall continue to pay each Ordinary Course Liability accrued prior to the Effective Date, pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability, and the Approved Budget. The Reorganized Debtor shall continue to pay each Ordinary Course Liability accrued after the Effective Date, pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability.

c. <u>Allowed DIP Lender Claim.</u> The DIP Lender Claim is Allowed in full. Pursuant to the Subscription Option, the DIP Lender shall have the option, on account of being the holder of the Allowed DIP Lender Claim, to exchange a total of up to 100% in satisfaction of such amount of the Allowed DIP Lender Claim for up to a total of 60% of the New Equity, at a rate of 1% of its Allowed DIP Lender Claim for .6% of the New Equity. Further, the DIP Lender, on account of being the holder of the Allowed DIP Lender Claim, shall receive from the Consideration, payment in Cash of the remaining amount of the Allowed DIP Lender Claim after the DIP Lender has exercised the Subscription Option to receive its share of the New Equity.[5]  On the Effective Date, all liens and interests granted in exchange for or in connection with the DIP Note and/or under the DIP Order shall be deemed discharged, cancelled, and released and shall be of no further force and effect.

d. <u>Payment of Statutory Fees</u>  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in Cash through the DIP Financing, up to the amount set forth in the Approved Budget, and otherwise with the Consideration equal to the amount of such Administrative Claim when due or no later than the Effective Date.  Post-petition U.S. Trustee fees and post-confirmation reports shall be paid and filed as required by 28 U.S.C. § 1930 until the Chapter 11 Case is closed, converted or dismissed, and failure to do either timely is a material default pursuant to section 1112 of the Bankruptcy Code. After confirmation, the Distribution Trustee will file with the court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Distribution Trustee will pay post-confirmation

---

[5] The Plan Sponsor reserves the right to modify the Subscription Option, provided that (i) no such modification shall adversely impact the Plan treatment of other creditors and (ii) such modification is approved by the Post-Petition Lender.

quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6). In no event will the Reorganized Debtor be responsible for payment of any U.S. Trustee fees.

2. **Bar Date For Administrative Claims**

    a.   General Provisions. Except as otherwise provided in Article IV of the Plan, requests for payment of Administrative Claims must be included within an application (setting forth the amount of, and basis for, such Administrative Claims, together with documentary evidence) and Filed and served on respective counsel for the Debtor and Plan Sponsor no later than ten (10) days after the Confirmation Hearing or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date. Holders of Administrative Claims (including, without limitation, professionals requesting compensation or reimbursement of expenses and the holders of any Claims for federal, state or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date specified in either section 4.1(c)(i), (ii) or (iii) of the Plan shall be forever barred from asserting such Claims against the Debtor or any of its property, absent order of the Court to the contrary.  Requests for payments of Administrative Claims included within a proof of claim are of no force and effect, and shall be disallowed in their entirety as of the Confirmation Date unless such Administrative Claim is subsequently Filed in a timely fashion as provided herein.

    b.   Professionals.    All professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation or commission requested by any professional or any other entity for making a substantial contribution in the Chapter 11 Case) shall File and serve on the Reorganized Debtor, the Distribution Trust, the U.S. Trustee and the Post-Confirmation Service List an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor, the Distribution Trust, the U.S. Trustee and the Post-Confirmation Service List and the professionals to whose application the objections are addressed no later than twenty-one (21) days after the date the application is filed, or the Bankruptcy Court may enter an order authorizing the fees without a hearing.

    c.   Tax Claims. All requests for payment of Administrative Claims and other Claims by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, which accrued or was assessed within the period from and including the Petition Date through and including the Effective Date ("Post-Petition Tax Claims") and for which no bar date has otherwise been previously established, must be Filed on or before the later of (i) forty-five (45) days following the Effective Date; and (ii) ninety (90) days following the filing with the applicable Governmental Unit of the tax return for such taxes for such tax year or period. Any holder of any Post-Petition Tax Claim that is required to File a request for payment of such taxes and does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor or its property, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date. To the extent that the holder of a Post-Petition Tax Claim holds a lien to secure its Claim under applicable state law, the holder of such Claim shall retain its lien until its Allowed Post-Petition Tax Claim has been paid in full.

### 3.    Allowed Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim against Debtor shall receive, from the Consideration, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim (i) Cash equal to the amount of such Allowed Priority Tax Claim, (ii) payment in full through the fifth anniversary of the Petition Date, plus interest, or (iii) such other less favorable treatment to the Holders of an Allowed Priority Tax Claim as to which the Debtor, or the Debtor, the Plan Sponsor, and the Holder of such Allowed Priority Tax Claims shall have agreed upon in writing.

### B.    Classification and Treatment of Claims and Equity Interests

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes or Claims and Equity Interests. A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

### 1.    Class 1: Priority Unsecured Non-Tax Claims

Each holder of an Allowed Priority Unsecured Non-Tax Claim against the Debtor shall receive, from the Consideration, on the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Unsecured Non-Tax Claim, either cash equal to the full unpaid amount of such Allowed Priority Unsecured Non-

Tax Claim, or such other treatment as the Debtor, the Plan Sponsor and the holder of such Allowed Priority Unsecured Non-Tax Claim shall have agreed.

Class 1 is Unimpaired and therefore holders of Priority Unsecured Non-Tax Claims are conclusively presumed to have accepted the Plan.

### 2.      Class 2: Pre-Petition Lender Secured Claim

On the Effective Date, the holder of the Allowed Pre-Petition Lender Secured Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, the Allowed Pre-Petition Lender Secured Claim the Secured Lender Recovery up to the full amount of the Allowed Pre-Petition Lender Secured Claim; provided that the Distribution on the Effective Date on the Allowed Pre-Petition Lender Secured Claim shall only occur after accounting for funding of the Distribution Reserve, in an amount required under the Plan; provided further, as Distributions are made and claims are reconciled with respect to claims accounted for in the Distribution Reserve, the Pre-Petition Lender shall be entitled to payments from the funds remaining in the Distribution Reserve that were previously earmarked for Claims that have been otherwise addressed.

Class 2 is Impaired and therefore the holder of the Pre-Petition Lender Secured Claim is entitled to vote on the Plan.

### 3.      Class 3:  Other Secured Claims

Each holder of an Allowed Secured Claim, except the Pre-Petition Lender, shall receive, at the election of the Plan Sponsor, on account of and in full and complete settlement, release and discharge of, and in exchange for, its Allowed Secured Claims, (i) cash from the Consideration, prior to any payment to the Allowed Pre-Petition Secured Lender Claim, or the Allowed General Unsecured Claims, in an amount sufficient to satisfy it claim, net of default interest, (ii) reinstatement pursuant to section 1124 of the Bankruptcy Code, (iii) receipt of the collateral securing such claim and any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code, (iv) such other treatment as the Plan Sponsor and the applicable holder of the Allowed Secured Claim may agree, and/or (v) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

Class 3 is Impaired and therefore holders of Other Secured Claims are entitled to vote on the Plan.

### 4.      Class 4:  General Unsecured Claims

Each holder of an Allowed General Unsecured Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for its Allowed General Unsecured Claim, payment in full from the Guaranteed Unsecured Recovery.

Class 4 is Impaired and therefore holders of General Unsecured Claims are entitled to vote on the Plan.

### 5.    Class 5: Intercompany Claims

Each holder of an Allowed Intercompany Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for its Allowed Intercompany Claim, its Pro Rata Share of the Consideration remaining after payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Unsecured Non-Tax Claims, Allowed Pre-Petition Lender Secured Claim, Allowed Other Secured Claim, and Allowed General Unsecured Claims.

Class 5 is Impaired and therefore holders of Intercompany Claims are entitled to vote on the Plan.

### 6.    Class 6:  Equity Interests

No Distributions will be made to holders of Allowed Equity Interests. On the Effective Date, all Allowed Equity Interests shall be deemed automatically cancelled, released, and extinguished without further action by the Debtor or the Reorganized Debtor, and the obligation of the Debtor and the Reorganized Debtor thereunder shall be discharged.

Class 6 is Impaired and is deemed to reject the Plan.

### C.    Acceptance or Rejection of the Plan

### 1.    Impaired Classes Entitled to Vote

Holders of Claims in Class 2, 3, 4, and 5 are impaired and each Class is entitled to vote as a Class to accept or reject the Plan.  Accordingly, only the Holders of Claims in Class 2, 3, 4, and 5 shall be solicited with respect to the Plan.

### 2.    Acceptance by Class 2, 3, 4, and 5

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

### 3.    Presumed Acceptances by Class 1

Class 1 is unimpaired under the Plan.  Under section 1126(f) of the Bankruptcy Code, holders of such unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of such unimpaired Claim Holders shall not be solicited.

### 4.    Deemed Rejection by Class 6

Class 6 is impaired under the Plan and is deemed to reject the Plan. Therefore, Interest Holders in Class 6 are not entitled to vote to accept or reject the Plan.

### D.    Means for Implementation of the Plan

#### 1.    Continued Corporate Existence

Except as otherwise provided in the Plan, the Reorganized Debtor will continue to exist after the Effective Date as a corporate entity, with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtor is incorporated and pursuant to its Charter Documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan.

Upon the Effective Date, and without any further action by the shareholders, directors, or officers of the Reorganized Debtor, the Reorganized Debtor's Charter Documents shall be deemed amended (a) to the extent necessary, to incorporate the provisions of the Plan, and (b) to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Charter Documents as permitted by applicable law, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval other than any requisite filings required under applicable state, provincial or federal law.  The Charter Documents shall be filed with the Plan Supplement.

#### 2.    Management and Board of Directors

The Plan Sponsor may nominate and elect new members for the board of directors of the Reorganized Debtor in accordance with the Reorganized Debtor's Charter Documents. The identity of such new members shall be disclosed in the Plan Supplement prior to the Plan Supplement Deadline.  Upon the Effective Date, the current members of the Debtor's board of directors shall no longer serve in such capacity and shall be discharged of all duties in connection therewith.

#### 3.    Arrangements with the Distribution Trustee

By the Plan Supplement Deadline, the Debtor shall file with the Bankruptcy Court a disclosure identifying the Distribution Trustee under the Distribution Trust.  At the Confirmation Hearing, the Bankruptcy Court shall ratify such Distribution Trustee.  All compensation for the Distribution Trustee shall be paid from the Distribution Trust Assets in accordance with the Distribution Trust Agreement.  The approved person shall serve as the Distribution Trustee on execution of the Distribution Trust Agreement at the Closing.

#### 4.    The Closing

The Closing of the transactions required and contemplated under the Plan shall take place on the Effective Date at the offices of Haynes and Boone, LLP, 30 Rockefeller Plaza, 26th Floor, New York, New York 10112, or at such other place identified in a notice provided to those parties listed in Section 13.12 of the Plan.  The Proponents may reschedule the Closing by making an announcement at the originally scheduled Closing of the new date for the Closing.  A notice of the rescheduled Closing shall be filed with the Bankruptcy Court and served on the parties identified in Section 13.12 of the Plan within two (2) days after the originally scheduled Closing.  All documents to be executed and delivered by any party as provided in this Article VI

and all actions to be taken by any party to implement the Plan as provided herein shall be in form and substance satisfactory to the Debtor and Plan Sponsor. The following actions shall occur at or before the Closing (unless otherwise specified), and shall be effective on the Effective Date:

a. <u>Execution of Documents and Corporate Action</u>. The Debtor shall deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Plan. The Debtor, or its designee, is authorized (i) to execute on behalf of the Debtor, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate the Plan and (ii) to undertake any other action on behalf of the Debtor to consummate the Plan. Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtor. On the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtor, and all corporate actions required by the Debtor, the Debtor, and the Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor or the Reorganized Debtor. For purposes of effectuating the Plan, none of the transactions contemplated in the Plan shall constitute a change of control under any agreement, contract, or document of the Debtors.

b. <u>Cancellation of Equity Interests</u>. On the Effective Date, all existing Equity Interests of Debtor shall be retired, cancelled, extinguished and/or discharged in accordance with the terms of the Plan. Except as otherwise provided in the Plan or the Plan Supplement, on the Effective Date: (1) the obligations of the Debtor under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Equity Interest shall be cancelled as to the Debtor and the Reorganized Debtor shall not have any continuing obligations thereunder and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be released and discharged. On the Effective Date, 1,000 shares of New Equity of the Reorganized Debtor shall be issued.

c. <u>Issuance of New Equity</u>. The New Equity shall be free and clear of all Liens, Claims, Interests, and encumbrances of any kind, except as otherwise provided in the Plan. All the shares of the New Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assignable. On the Effective Date, none of the New Equity will be listed on a national securities exchange. Reorganized Debtor may take all necessary actions, if applicable, after the Effective Date to suspend any requirement to (i) be a reporting company under the Securities Exchange Act, and (ii) file reports with the Securities and Exchange Commission or any other entity or party. Furthermore, the Reorganized Debtor shall not be required to file monthly operating reports, or any other type of report, with the Court after the Effective Date.

d. <u>Funding of the Consideration</u>.  On the Effective Date, the Plan Sponsor shall contribute to the Debtor an amount of Cash equal to the Consideration in consideration of the Plan Sponsor's purchase of the New Equity.  The Consideration is not subject to any financing contingency.  The Consideration shall be used to fund Distributions under the Plan.  To the extent any amount of Allowed DIP Lender Claim remains after the DIP Lender exercises the Subscription Option, the remainder of its Allowed DIP Lender Claim shall be repaid in Cash from be Consideration on the Effective Date.

e. <u>Execution and Ratification of the Distribution Trust Agreement</u>.  On the Effective Date, the Distribution Trust Agreement shall be executed by all parties thereto.  The Distribution Trust Agreement shall be provided in the Plan Supplement.  Each holder of a Claim shall be deemed to have ratified and become bound by the terms and conditions of the Distribution Trust Agreement.

f. <u>Transfer of Distribution Trust Assets</u>.  All property of the Debtor constituting the Distribution Trust Assets shall be conveyed and transferred by the Debtor to the Distribution Trust, free and clear of all Liens, Claims, Equity Interests, and encumbrances.

**5.    Tax Treatment of the Distribution Trust**

The Distribution Trust established under the Plan is established for the purpose of distributions to Administrative Claims, Priority Tax Claims, Priority Unsecured Non-Tax Claims, Pre-Petition Lender Secured Claim, Other Secured Claims, General Unsecured Claims, and Intercompany Claims by liquidating the Distribution Trust Assets transferred to the Distribution Trust and performing related and incidental functions referenced in the Distribution Trust Agreement, and the Distribution Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the trust. The purpose of the Distribution Trust is to provide a mechanism for the liquidation of the Distribution Trust Assets, and to distribute the Consideration and the

proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and obligations of the Distribution Trust, to the Beneficiaries in accordance with the terms of the Plan. No business activities will be conducted by the Distribution Trust other than those associated with or related to the liquidation of the Distribution Trust Assets. It is intended that the Distribution Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of the Treasury Regulations Section 301.7701-4(d). All parties and Beneficiaries shall treat the transfers in trust described herein as transfers to the Beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including Sections 61(a)(12), 483, 1001, 1012, and 1274 thereof). All the parties and Beneficiaries shall treat the transfers in trust as if all the transferred assets, including all the Distribution Trust Assets, had been first transferred to the Beneficiaries and then transferred by the Beneficiaries to the Distribution Trust. The Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Distribution Trust and the owners of the Distribution Trust. The Distribution Trustee shall file returns for the Distribution Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or (b). All parties, including the Beneficiaries and the Distribution Trustee, shall value the Distribution Trust Assets consistently, and such valuations shall be used for all federal income tax purposes. Beneficiaries may wish to consult with a tax professional regarding the tax consequences of holding a Beneficial Interest in or receiving a Distribution from the Distribution Trust.

### 6.    Preservation of Rights of Action

Unless any Claims against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all retained causes of action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, the Reorganized Debtor shall retain and shall have the exclusive right to enforce any and all claims, rights and causes of action arising from or related to its (a) Intellectual Property and (b) accounts receivable and cash (including, without limitation, claims for turnover of cash of the Debtor being held in escrow or on deposit by third parties).

### 7.    Vesting of Property in Reorganized Debtor

On the Effective Date, except as otherwise expressly provided in the Plan or Confirmation Order, all Estate Property (including, without limitation, the Debtor's equity interest in FirstRain India), other than the Distribution Trust Assets, shall vest in the Reorganized Debtor free and clear of all Liens, Claims, Equity Interests, and encumbrances of any kind, except as otherwise provided in the Plan. On the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property, without supervision of approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules

### 8.    Tax Exemption

The Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; (b) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (c) the making or assignment of any lease; (d) the creation, execution and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor; or (e) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Estate's assets in the Reorganized Debtor or the Distribution Trust pursuant to or in connection with the Plan, including, without limitation, merger agreements, stock purchase agreement, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property.  Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 9.    No Successor Liability

Pursuant to section 1141 of the Bankruptcy Code and Article XI of the Plan, the property of the Debtor's estate shall vest in the Reorganized Debtor, free and clear of all claims and interests of creditors and equity holders of the Debtor. Moreover, pursuant to section 1141(d) of the Bankruptcy Code, the effect of confirmation of the Plan shall be to discharge the Debtor from any debt that arose before the date confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### E.    Treatment of Executory Contracts and Unexpired Leases

### 1.    Assumption of Executory Contracts

On the Effective Date, and subject to Section 8.6 of the Plan, all Executory Contracts identified on the Schedule of Assumed Contracts and Unexpired Leases, to be attached as Exhibit B to the Plan, shall be deemed assumed by the Reorganized Debtor.  The Plan Sponsor may amend the Schedule of Assumed Contracts and Unexpired Leases through the Effective Date.  Entry of the Confirmation Order shall constitute approval of the assumption of such Executory Contracts under sections 365 and 1123 of the Bankruptcy Code.

### 2.    Rejection of Executory Contracts

All Executory Contracts not identified on the Schedule of Assumed Contracts and Unexpired Leases (or assumed by the Debtor previously) shall be deemed rejected on the Effective Date. Entry of the Confirmation Order shall constitute approval of such rejections under sections 365 and 1123 of the Bankruptcy Code.  Notwithstanding the rejection of an Executory Contract, the terms of any confidentiality agreement or covenant not to compete contained therein shall survive and remain in full force and effect for the term thereof.

The Debtor will reject prior to the Effective Date, and the Reorganized Debtor will not assume, the FirstRain India Contract.

The Debtor will reject prior to the Effective Date, and the Reorganized Debtor will not assume, any employment, severance, bonus, incentive, commission, compensation or similar agreement or plan (or any agreement outside the ordinary course of business) with any employees, officers or directors.  To the extent the 401(k) Plan has not yet been formally rejected and/or terminated prior to the Effective Date, such 401(k) Plan is being rejected by the Reorganized Debtor, and the Debtor shall take all steps necessary prior to the Effective Date to effectuate termination of the 401(k) Plan.  The Debtor will reject prior to the Effective Date, and the Reorganized Debtor will not assume, the Employee Handbook, if any.

On the Effective Date, any and all equity based incentive plans or stock ownership plans of the Debtor, including all agreements related thereto, entered into before the Effective Date, or other plans, agreements or documents giving rise to Equity Interests, including the contingent cash components of any such plans, agreements, or documents, shall be immediately terminated without any action of the Debtor, the Debtor, the Reorganized Debtor or the Plan Sponsor.  To the extent such plans, agreements or documents are considered to be Executory Contracts, such plans, agreements or documents shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Plan.  From and after the Effective Date, all warrants, stock options and other equity awards outstanding or issued at such time, whether included in a warrant, plan, contract, agreement or otherwise, will have no value, shall be cancelled and extinguished and thus will not entitle any holder thereof to purchase or otherwise acquire any equity interests in the Reorganized Debtor.

### 3.    Procedures Related to Assumption of Executory Contracts

a)    Establishment of Cure Claim Amounts

The Cure Amounts associated with the assumption of the Executory Contracts pursuant to Section 8.1 hereof are specified in the Schedule of Assumed Contracts and Unexpired Leases. The Debtor shall serve counterparties to the Executory Contracts with a Notice of (I) Possible Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto (the "Cure Notice"). The deadline for service of Cure Notices is [  ], 2017.

Any Objection to Cure Notice including (i) an objection to the applicable Cure Amount (a "Cure Objection") and (ii) an objection to the adequate assurance of future performance (a "Adequate Assurance Objection") to be provided by the Plan Sponsor on behalf of the Reorganized Debtor must be in writing, filed with the Court, and served upon (a) the Debtor, (b) counsel to the Debtor, (c) counsel to the Plan Sponsor, and (d) the U.S. Trustee, by no later than July [  ], 2017 (the "Objection Deadline"). The objection must set forth the specific default alleged under the applicable Assumed Contract or Unexpired Lease and claim a specific monetary amount that differs from the applicable Cure Amount, if any, and/or further information required of the Reorganized Debtor with respect to adequate assurance of future performance.

If no Objection to the Cure Amount is received by the Objection Deadline to an Assumed Contract or Unexpired Lease, then the assumption of such Assumed Contract or Unexpired Lease shall be authorized pursuant to section 365 of the Bankruptcy Code and the applicable Cure Amount, if any, shall be binding upon the non-Debtor counterparty to such Assumed

Contract or Unexpired Lease for all purposes and shall constitute a final determination of the cure amount required to be paid to such Assumed Contract or Unexpired Lease counterparty in connection with the assumption of such Assumed Contract or Unexpired Lease, and the non-Debtor counterparty to such Assumed Contract or Unexpired Lease shall be deemed to have waived its right to object to, contest, condition, or otherwise restrict the assumption of such Assumed Contract or Unexpired Lease (including, without limitation, from asserting any additional cure or other amounts with respect to the Assumed Contract or Unexpired Lease arising prior to such assumption).  Furthermore, upon the assumption of such Assumed Contract or Unexpired Lease, the Reorganized Debtor shall enjoy all of the Debtor's rights and benefits thereunder without the necessity of obtaining any party's written consent to the Debtor's assumption of such rights and benefits.

b)    Objection to Disputed Cure Amounts

The Plan Sponsor shall have the right to examine any Objection to Cure Amount filed by any party, and shall have the right to object to and contest the Disputed Cure Amount asserted therein.

If an objection to a Disputed Cure Amount has not been resolved by the Bankruptcy Court or agreement of the parties by the Effective Date, the Executory Contract related to such Disputed Cure Amount shall be deemed assumed by the Reorganized Debtor effective on the Effective Date; provided, however, the Reorganized Debtor may revoke an assumption of any such Executory Contract within ten (10) days after entry of an order by the Bankruptcy Court adjudicating the objection to the Disputed Cure Amount related to the Executory Contract by filing a notice of such revocation with the Bankruptcy Court and serving a copy on the party(ies) whose Executory Contract is rejected.  Any Executory Contract identified in a revocation notice shall be deemed rejected retroactively to the Effective Date.

c)    Payment of Cure Amounts

Within ten (10) Business Days after the Effective Date, the Plan Sponsor shall pay all Cure Amounts related to Executory Contracts listed on the Cure Notice, other than Disputed Cure Amounts.

Subject to Section 8.3(b) of the Plan, the Plan Sponsor shall pay all Cure Amounts that are subject to an objection on the later of (i) within ten (10) Business Days after the Effective Date or (ii) within ten (10) Business Days after entry of an order by the Bankruptcy Court resolving the objection or approving an agreement between the parties concerning the Cure Amount.

d)    No Admission of Liability.

Neither the inclusion nor exclusion of any Executory Contract by the Debtor and the Plan Sponsor on the Cure Notice, nor anything contained in the Plan, shall constitute an admission by the Debtor or the Plan Sponsor that any such contract or unexpired lease is in fact an Executory Contract or that the Debtor has any liability thereunder.

e)      Reservation of Rights.

Nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, causes of action, or other rights of the Debtor under any executory or non-executory contract or any unexpired or expired lease, nor shall any provision of the Plan increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor under any such contract or lease.

### 4.      Rejection Claim Bar Date

Each Claim resulting from the rejection of an Executory Contract, pursuant to Section 8.2 of the Plan, shall be filed with the Bankruptcy Court no later than the Rejection Claim Bar Date; provided, however, any party whose Executory Contract is rejected pursuant to a revocation notice, pursuant to Section 8.3(b) of the Plan, may file a rejection damage Claim arising out of such rejection within thirty (30) days after the filing of the revocation notice with the Bankruptcy Court.  Any Claim resulting from the rejection of an Executory Contract not filed by the applicable deadline shall be discharged and forever barred, and shall not be entitled to any Distributions under the Plan.  The Distribution Trustee shall have the right to object to any rejection damage Claim.

### 5.      Indemnification Obligations

Any obligation of the Debtor to indemnify, reimburse, or limit the liability of any Person, including any officer or director of the Debtor, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtor, relating to any acts or omissions occurring before the Effective Date, whether arising pursuant to charter, bylaws, contract or applicable state law, shall be deemed to be, and (a) shall be treated as, a General Unsecured Claim and/or Executory Contract and shall be deemed to be rejected, canceled, and discharged pursuant to the Plan as of the Effective Date and (b) any and all Claims resulting from such obligations are disallowed under section 502(e) of the Bankruptcy Code or other applicable grounds, including section 502(d) or violations of sections 327, 362, 363 or other requirements of the Bankruptcy Code, or if any court of applicable jurisdiction rules to the contrary, such Claim shall be estimated pursuant to section 502(c) of the Bankruptcy Code in the amount of $0 or such other amount as the Bankruptcy Court shall determine.

### F.      Provisions Governing Distributions of Property

### 1.      Distributions Procedures Regarding Allowed Claims

a)      In General.

The Distribution Trustee shall make all Distributions required to be made under the Plan, including Distributions from the Distribution Trust.

b)      Distributions on Allowed Claims Only.

Distributions from Available Cash shall be made only to the holders of Allowed Claims. Until and if a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim

shall not receive a Distribution from Available Cash. For the avoidance of doubt, no Distributions shall be made to holders of Allowed Equity Interests.

c)      Place and Manner of Payments of Distributions.

Except as otherwise specified in the Plan, Distributions from Available Cash shall be made by mailing such Distribution to the Creditor at the address listed in any proof of claim or interest filed by the Creditor or at such other address as such Creditor shall have specified for payment purposes in a written notice received by the Distribution Trustee at least twenty (20) days before a Distribution Date. If a Creditor has not filed a proof of claim or sent the Distribution Trustee a written notice of payment address, then the Distribution(s) for such Creditor will be mailed to the address identified in the Schedules of Assets and Liabilities. The Distribution Trustee shall distribute any Cash by wire, check, or such other method as it deems appropriate under the circumstances. Before receiving any Distributions, all Creditors, at the request of the Distribution Trustee, must provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers to the Distribution Trustee; otherwise, the Distribution Trustee may suspend Distributions to any Creditors who have not provided their Federal Tax Identification Numbers or Social Security Numbers.

d)      Undeliverable Distributions.

If a Distribution made from Available Cash to any Creditor is returned as undeliverable, the Distribution Trustee shall use reasonable efforts to determine the then current address for such Creditor. If the Distribution Trustee cannot determine, or is not notified of, a then current address for such Creditor or Interest Holder within six months after the Effective Date, the Distribution reserved for such Creditor shall be deemed an unclaimed Distribution, and Section 7.5(e) of the Plan shall be applicable thereto.

e)      Unclaimed Distributions.

If the current address for a Creditor entitled to a Distribution from Available Cash under the Plan has not been determined within six months after the Effective Date or such Creditor has otherwise not been located or submitted a valid Federal Tax Identification Number or Social Security Number to the Distribution Trustee, then such Creditor (i) shall no longer be a Creditor and (ii) shall be deemed to have released such Claim.

f)      Withholding.

The Distribution Trustee may, but shall not be required to, at any time withhold from a Distribution from Available Cash to any Person (except the Internal Revenue Service) amounts sufficient to pay any tax or other charge that has been or may be imposed on such Person with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any Distribution provided for in the Plan, whenever such withholding is determined by the Distribution Trustee (in its sole discretion) to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Distribution Trustee, in the exercise of its sole discretion and judgment, may

enter into agreements with taxing or other authorities for the payment of such amounts that may be withheld in accordance with the provisions of this section.

> g)   Dissolution.

> i.   The Distribution Trustee and Distribution Trust shall be discharged or dissolved, as the case may be, at such time as all of the Distribution Trust Assets have been distributed pursuant to the Plan and the Distribution Trust Agreement; provided, however, that in no event shall the Distribution Trust be dissolved later than three (3) years from the creation of the Distribution Trust unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Distribution Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the liquidation of the Distribution Trust Assets.

> ii.   If at any time the Distribution Trustee determines, in reliance upon such professionals as a Distribution Trustee may retain, that the expense of administering the Distribution Trust so as to make a final distribution to Distribution Trust Beneficiaries is likely to exceed the value of the assets remaining in the Distribution Trust, the Distribution Trustee may (i) reserve any amount necessary to dissolve the Distribution Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Internal Revenue Code, (B) exempt from United States federal income tax under section 501(a) of the Internal Revenue Code, (C) not a "private foundation," as defined in section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtor, the Distribution Trust, and any insider of the Distribution Trustee, and (iii) dissolve the Distribution Trust.

### 2.   Procedures Regarding Distributions from the Distribution Trust

Procedures regarding Distributions from the Distribution Trust shall be governed by the Distribution Trust Agreement.

### G.   Procedures for Resolution of Disputed Claims

### 1.   Right to Object to Claims

Notwithstanding anything to the contrary herein, subject to the terms and conditions set forth in the Distribution Trust Agreement, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Distribution Trustee shall have the authority, but not the obligation, to: (1) file, withdraw or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court; *provided, however*, that until such time as the Pre-Petition Lender has received the full amount of the Allowed Pre-Petition Lender Secured Claim, the

Distribution Trustee shall consult with the Pre-Petition Lender in performing the duties set forth in this section and may not, without the written consent of the Pre-Petition Lender or order of the Bankruptcy Court, settle or resolve any Disputed Claim, or Claim not scheduled by the Debtor, for an amount more than $5,000 in excess of that shown by the Debtor on its schedules.  The Distribution Trustee shall succeed to any pending objections to Claims filed by the Debtor prior to the Effective Date, and shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim.  The Reorganized Debtor shall provide commercially reasonable assistance and cooperation to the Distribution Trustee, at the Distribution Trustee's cost, in connection with the Distribution Trustee's prosecution of objections to Claims, including, without limitation, reasonable access to the books and records of the Debtor or the Reorganized Debtor (as the case may be) and other information reasonably requested by the Distribution Trustee to enable the Distribution Trustee to perform its obligations under the Distribution Trust Agreement.

### 2.      Deadline for Objecting to Claims

Objections to Claims must be filed with the Bankruptcy Court, and a copy of the objection must be served on the subject Creditor before the expiration of the Claim Objection Deadline (unless such period is further extended by subsequent orders of the Bankruptcy Court); otherwise such Claims shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code.  The objection shall notify the Creditor of the deadline for responding to such objection.

### 3.      Deadline for Responding to Claim Objections

Within twenty (20) days after service of an objection, or such other date as is indicated on such objection or the accompanying notice thereof, the Creditor whose Claim was objected to must file a written response to the objection with the Bankruptcy Court and serve a copy on the Distribution Trustee.  Failure to file a written response within the twenty (20) day time period may cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor or granting the relief requested in the claim objection.

### 4.      Right to Request Estimation of Claims

Pursuant to section 502(c) of the Bankruptcy Code, the Debtor, the Reorganized Debtor, and the Distribution Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

### H.      Injunctions, Releases, and Discharge

### 1.      Discharge and Release

**To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all distributions under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and causes of action, whether known or unknown, including any interest accrued on such Claims from and after**

the Petition Date, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in the Debtor or any of its assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtor and its estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Equity Interests in the Debtor, subject to the occurrence of the Effective Date.

2.    Discharge Injunction

Except as otherwise expressly provided in the Plan, the discharge and releases set forth in Section 11.1 of the Plan shall also operate as an injunction permanently prohibiting and enjoining the commencement or continuation of any action or the employment of process with respect to, or any act to collect, recover from, or offset (a) any Claim discharged and released in Section 11.1 of the Plan, or (b) any cause of action, whether known or unknown, based on the same subject matter as any Claim discharged and released in Section 11.1 of the Plan. Except as otherwise expressly provided in the Plan, all Persons shall be precluded and forever barred from asserting against the Protected Parties, their successors or assigns, or their assets, properties, or interests in property any other or further Claims, or any other right to legal or equitable relief regardless of whether such right can be reduced to a right to payment, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

3.    Exculpation and Limitation of Liability

The Exculpated Parties will neither have nor incur any liability to any entity for any claims or causes of action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the approval of the Disclosure Statement or confirmation or consummation of the Plan; provided, however, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; provided, further, that the Debtor will be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above referenced documents, actions or inactions.

31

4.      **Releases by the Debtor**

**Notwithstanding anything to the contrary in the Plan or the Confirmation Order, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby acknowledged and confirmed, the Debtor will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to the Released Parties and their respective related parties (and each such Released Party and their respective related parties so released shall be deemed forever released, discharged, and waived by the Debtor) and their respective properties from any and all released claims that the Debtor and their respective related parties would have been legally entitled to assert in their own right, on behalf of one another, or on behalf of another party against the Released Parties or their respective related parties; provided, however, that the foregoing provisions of this release shall not operate to waive or release (i) any Distribution Trust Action expressly set forth in and preserved by the Plan or the Plan Supplement; (ii) the rights of the Debtor to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to final order of the Bankruptcy Court; and/or (iii) any claims or defenses against third party.**

**The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any person and the Confirmation Order will permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to this release.**

5.      **Releases by Third Party**

**To the extent allowed by applicable law, on, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Protected Parties (acting in any capacity whatsoever) shall be forever released and discharged from any and all claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, or claims in respect of equitable subordination, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of facts or circumstances that existed as of or prior to the Plan in the Chapter 11 Case, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, its Estate, or the Reorganized Debtor would have been legally entitled by applicable law to assert in its own right, whether individually or collectively) which the Debtor, its Estate, the Reorganized Debtor, Creditors or other persons receiving or who are entitled to receive Distributions under the Plan may have against any of them in any way related to the Chapter 11 Case or the Debtor (or its predecessors); provided, however, the releases provided for in this paragraph shall not extend to any claims by any**

**Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, or *ultra vires* acts under applicable law. No compliance with or reliance on the applicable law or the orders of the Bankruptcy Court shall be deemed or permitted to be judged, declared, or ruled to be in any way wrongful, in bad faith, *ultra vires*, inequitable or otherwise subject to any sanction or punishment, all of which are preempted, superseded and negated by the Plan to the maximum extent permitted by applicable law.**

**A vote to accept the Plan, or failure to vote by a Creditor entitled to vote, constitutes an acceptance of all of the terms and provisions contained in the Plan, including, but not limited to, the grant of releases, injunctions, exculpation, exoneration and other limitations of liability in the Plan. If a Creditor votes to reject the Plan, the Creditor may nevertheless be deemed to be bound to the releases and be bound by the injunctions, exculpations, and other limitations of liability in the Plan to the maximum extent permitted by law, as later determined by the Court. Notwithstanding the foregoing, if a Creditor elects not to grant the releases contained in Section 11.5 of the Plan in favor of the Protected Parties, then the Creditor must opt-out in the Ballot regardless of whether Creditor votes to accept or to reject the Plan or chooses to abstain from voting to accept or reject the Plan.  Election to withhold consent is at the Creditor's option.**

**For the avoidance of doubt, nothing in Article XI of the Plan shall prevent the enforcement of the terms of the Plan.**

I.     **Conditions to Confirmation and Effectiveness**

1.     **Conditions to Confirmation**

The Confirmation Order will not be effective unless (a) the Confirmation Order shall be in form and substance acceptable to the Plan Sponsor, in its reasonable discretion, and shall provide for the Plan Sponsor and the DIP Lender to acquire the New Equity subject to the Subscription Option, free and clear of all Liens, Claims, Equity Interests and encumbrances of any kind, except as otherwise provided in the Plan, and (b) the final version of the Plan, Plan Supplement, and any other documents, or schedules thereto, shall have been filed in form and substance acceptable to the Plan Sponsor in its reasonable discretion.

2.     **Conditions to Effectiveness**

The Plan will not be effective unless (a) the conditions to confirmation above have been either satisfied, or waived, by the Plan Sponsor, (b) the Confirmation Order has been entered by the Bankruptcy Court, and no stay or injunction is in effect with respect thereto, (c) Plan Sponsor and the DIP Lender shall acquire the New Equity subject to the Subscription Option, free and clear of all Liens, Claims, Equity Interests and encumbrances of any kind, except as otherwise provided in the Plan, and (d) the Debtor has not caused, or as to insiders, permitted to occur, (i) a Material Adverse Change with respect to the Debtor's Intellectual Property or (ii) an "ownership change" as such term is used in section 382 of title 26 of the United States Code.

### J.    Modification, Revocation or Withdrawal of the Plan

#### 1.    Defects, Omissions, and Amendments of the Plan

The Debtor may, with the approval of the Bankruptcy Court and without notice to holders of Claims and Equity Interests, insofar as it does not materially and adversely affect holders of Claims and Equity Interests, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan.   The Debtor may propose amendments or alterations to the Plan before the Confirmation Hearing as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims and Equity Interests, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code.   The Debtor may propose amendments or alterations to the Plan after the Confirmation Date but prior to substantial consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect holders of Claims and Equity Interests, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtor has complied with section 1125 of the Bankruptcy Code, and after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

#### 2.    Withdrawal of the Plan

The Debtor reserves the right to withdraw the Plan at any time prior to the Confirmation Date. If the Debtor withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur by July 26, 2017, unless otherwise extended by mutual agreement of the Debtor and the Plan Sponsor or the Effective Date does not occur by July 31, 2017, unless otherwise extended by mutual agreement of the Debtor and the Plan Sponsor, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor, the Debtor's Estate, or any person in any further proceedings involving the Debtor.

### K.    Retention of Jurisdiction

#### 1.    Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Chapter 11 Case to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

a.    To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Right of Action, Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

b.  To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

c.  To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

d.  To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

e.  To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any Plan Documents or any entity's obligations in connection with the Plan or any Plan Documents, or to defend any of the rights, benefits, Estate Property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

f.  To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor, the Estate, the Reorganized Debtor or the Distribution Trustee;

g.  To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor, the Debtor or the Estate that may be pending on the Effective Date or that may be brought by the Debtor, the Reorganized Debtor, or the Distribution Trustee (as applicable), or any other related proceedings by the Reorganized Debtor, and to enter and enforce any default judgment on any of the foregoing;

h.  To decide or resolve any and all applications filed by the Debtor for compensation;

i.  To issue orders in aid of execution and implementation of the Plan or any Plan Documents to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

j.  To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of the Plan or any Plan Documents;

k.  To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Case; and

l.  To enter an order closing this Chapter 11 Case when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

### 2. Limitations on Jurisdiction

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents.  For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

   a. Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in accordance with 28 U.S.C. § 157(c) and any and all related proceedings, including, without limitation, (i) all proceedings concerning disputes with, or Rights of Action or Claims against, any Person that the Debtor, the Estate, the Distribution Trust or the Reorganized Debtor or any of their successors or assigns, may have, and (ii) any and all Rights of Action or other Claims against any Person for harm to or with respect to (x) any Estate Property, including any infringement of  Intellectual Property or conversion of Estate Property, or (y) any Estate Property liened or transferred by the Debtor to any other Person;

   b. Include jurisdiction over the recovery of any Estate Property (or property transferred by the Debtor with Bankruptcy Court approval) from any Person wrongly asserting ownership, possession or control of the same, whether pursuant to sections 542, 543, 549, 550 of the Bankruptcy Code or otherwise, as well as to punish any violation of the automatic stay under section 362 of the Bankruptcy Code or any other legal rights of the Debtor or the Estate under or related to the Bankruptcy Code; and

   c. Permit the taking of any default judgment against any Person who has submitted himself or herself to the jurisdiction of the Bankruptcy Court.

## V. POST-EFFECTIVE DATE OPERATIONAL/FINANCIAL INFORMATION

The Debtor believes that the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code, as Confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Reorganized Debtor.  In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the ability of the Reorganized Debtor to satisfy its financial obligations while maintaining sufficient liquidity and capital resources has been examined.

In particular, the Plan Sponsor and its affiliates have acquired more than 30 distressed software-related companies in the past 5 years.  The Plan Sponsor and its affiliates are experienced in successfully turning around distressed situations to generate sustainable profits.  The Plan Sponsor has committed to providing the Consideration to acquire the Debtor and its assets, through acquisition of the New Equity. The Plan Sponsor believes that under its management, the Reorganized Debtor will enhance its relationships with its employees, customers and vendors, while simultaneously engaging in cost-cutting efforts to drive efficiency and profitability. The Plan Sponsor possesses more than $20 million of liquidity and believes that it will be able to leverage its relationships, expertise and know-how to help the Reorganized

Debtor thrive.  Accordingly, the Plan Sponsor is confident that the Reorganized Debtor will be feasible going forward, and will not require a further reorganization.  Further, no Distributions to Creditors or Interest Holders are dependent on any metrics related to the Reorganized Debtor, such as the Reorganized Debtor's profitability.

## VI.    RISK FACTORS

### A.    Risks Related to Bankruptcy

#### 1.    Parties May Object to the Plan's Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.  The Debtor believes that the classification of the Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims or Equity Interests in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

#### 2.    The Debtor May Not Be Able to Obtain Confirmation of the Plan

With regard to any proposed plan of reorganization, the Debtor may not receive the requisite acceptances to confirm a plan.  In the event that votes from Claims in Classes 2, 3, 4 and 5 are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek confirmation of the Plan by the Bankruptcy Court.

Even if the requisite acceptances of a proposed plan are received, the Bankruptcy Court might not confirm the Plan as proposed if the Bankruptcy Court finds that any of the statutory requirements for confirmation under section 1129 of the Bankruptcy Code have not been met.

#### 3.    The Conditions Precedent to the Effective Date of the Plan May Not Occur

As more fully set forth in the Plan, the Effective Date is subject to certain conditions precedent.  If such conditions precedent are not met or waived, the Effective Date will not occur.

#### 4.    Risks Associated with Proving and Collecting Claims Asserted in Litigation

The ultimate recoveries under the Plan depends in part upon the pool of claims asserted against the Debtor and the ability of the Distribution Trustee to realize favorable litigation outcomes or settlements of Disputed Claims.  It is extremely difficult to place a value on litigation, and litigation outcomes cannot be predicted.

The risks in such litigation include, but are not limited to, risks associated with defenses and counter-claims of opposing parties to the litigation, the delay and expense associated with

discovery and trial of factually intensive and complex disputes, and the additional delay and expense inherent in appellate review.

### 5.        Allowed Claims May Exceed Estimates

The projected distributions set forth in this Disclosure Statement are based upon, among other things, good faith estimates of the total amounts of Claims that will ultimately be Allowed. The actual amount of Allowed Claims could be materially greater than anticipated, which will impact the distributions to be made to holders of Claims.

As of the date of this writing, the aggregate total dollar amount of scheduled Priority Unsecured Non-Tax Claims and General Unsecured Claims is approximately $700,000.  The aggregate total dollar amount of filed claims is likely to increase prior to the expiration of the Court established claims bar date.  The Debtor (and subsequently, the Distribution Trustee) will reconcile filed claims and reserve the right to object or compromise any filed claims on all applicable grounds.  Any increase in the aggregate total dollar amount of Priority Unsecured Non-Tax Claims and General Unsecured Claims will only reduce the Distribution to the Pre-Petition Lender (and the Intercompany Claims), and will not reduce the Distribution to the Allowed Priority Unsecured Non-Tax Claims and Allowed General Unsecured Claims.

### B.        Risks Related to Financial Information

The financial information contained in this Disclosure Statement has not been audited. In preparing this Disclosure Statement, the Debtor relied on financial data derived from the Debtor's books and records and schedules and statements that was available at the time of such preparation.  Although the Debtor has used reasonable efforts to assure the accuracy of the financial information provided in this Disclosure Statement  the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

## VII.    <u>CONFIRMATION OF THE PLAN</u>

### A.        The Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing to commence on [        ] (Eastern Time), before the Honorable [        ], United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801.  The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

Objections to Confirmation of the Plan must be filed and served by no later than [ ]. (Eastern Time).  **Unless objections to Confirmation of the Plan are timely served and filed**

**in compliance with the Disclosure Statement Order, they may not be considered by the Bankruptcy Court**.

### B.    Requirements for Confirmation of the Plan

Among the requirements for the Confirmation of the Plan is that the Plan (i) is accepted by all Impaired Classes of Claims or Equity Interests, or, if rejected by an Impaired Class of Claims or Equity Interests, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Impaired Class of Claims or Equity Interests; (ii) is feasible; and (iii) is in the "best interests" of Holders of Claims or Equity Interests.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  The Debtor believes that:  (i) the Plan satisfies or will satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtor has complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.  Specifically, in addition to other applicable requirements, the Debtor believes that the Plan satisfies or will satisfy the following applicable Confirmation requirements of section 1129 of the Bankruptcy Code:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor, as a plan proponent, has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- Either each holder of a Claim in an Impaired Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan will have accepted the Plan.

- Except to the extent a different treatment is agreed to, the Plan provides that all Administrative Claims and Allowed Priority Tax Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successors thereto.

- All accrued and unpaid fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

### C.    Best Interests of Creditors / Liquidation Analysis

Often called the "best interests of creditors" test, section 1129(a)(7) of the Bankruptcy Code requires that a Bankruptcy Court find, as a condition to confirmation of a chapter 11 plan, that the plan provides, with respect to each impaired class, that each holder of a claim or an interest in such class either (i) has accepted the plan or (ii) will receive or retain under the plan property of a value that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7 on the Effective Date.  To make these findings, the Bankruptcy Court must: (a) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if the  Chapter 11 Case was converted to a chapter 7 case on the Effective Date and the assets of the Debtor's Estate were liquidated; (b) determine the liquidation distribution that each non-accepting holder of a Claim or an Equity Interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare the holder's liquidation distribution to the distribution under the Plan that the holder would receive if the Plan were confirmed and consummated.

As further support, the Debtor has attached hereto as **Exhibit B** a liquidation analysis prepared by its chief financial officer.  Based on the foregoing and the liquidation analysis, the Debtor believes that holders of Claims will receive greater value as of the Effective Date under the Plan than such holders would receive in a chapter 7 liquidation.

### D.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor, or any successor to the Debtor (unless such liquidation or reorganization is proposed in the plan).  To determine whether the Plan meets this feasibility requirement, the Debtor and Plan Sponsor have analyzed the ability of the Reorganized Debtor to meet its obligations under the Plan.  Further, as discussed in Article V of this Disclosure Statement, the Debtor and Plan Sponsor believe that the Reorganized Debtor will be viable following the Effective Date, and that the Plan therefore meets the feasibility requirements of the Bankruptcy Code. The Debtor shall present further information and evidence regarding feasibility as may be necessary in connection with Confirmation of the Plan.  In any event, the Plan contemplates the funding of all Consideration by the Plan Sponsor on the Effective Date, and therefore creditor recoveries are not impacted by the Reorganized Debtor's post-Effective Date feasibility.

E.    **Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or interests that is impaired under a plan accept the plan.  A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.

A class is "impaired" unless a plan:  (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the interest entitles the holder of such claim or interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or reject the plan.  Thus, a Class of Impaired Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number actually voting cast their Ballots in favor of acceptance.

F.    **Confirmation Without Acceptance by All Impaired Classes**

Section 1129(b) of the Bankruptcy Code allows a Bankruptcy Court to confirm a plan even if all impaired classes have not accepted it, <u>provided</u> that the plan has been accepted by at least one impaired class, determined without including the acceptance of the plan by any insider. Notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown," so long as the plan does not "discriminate unfairly" (as discussed below) and is "fair and equitable" (as discussed below) with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, to the extent applicable, the Debtor shall request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary, subject to the written approval of the Plan Sponsor.

1.    **No Unfair Discrimination**

The "unfair discrimination" test applies to classes of claims or interests that reject or are deemed to have rejected a plan and that are of equal priority with another class of claims or interests that is receiving different treatment under such plan.  The test does not require that the treatment of such classes of claims or interests be the same or equivalent, but that such treatment be "fair."  In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors

differently without unfairly discriminating against either class. The Debtor submits that if the Debtor "crams down" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured such that it does not "discriminate unfairly" against any rejecting Class.

### 2. Fair and Equitable Test

The "fair and equitable" test applies to classes that reject or are deemed to have rejected a plan and are of different priority and status vis-à-vis another class (*e.g.*, secured versus unsecured claims, or unsecured claims versus equity interests), and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class, including interest. As to the rejecting class, the test sets different standards depending upon the type of claims or interests in such rejecting class. The Debtor submits that if the Debtor "crams down" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured such that the applicable "fair and equitable" standards are met.

## VIII. TAX CONSEQUENCES OF THE PLAN

**THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN TAX LAWS AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

## IX. CERTAIN SECURITIES LAW MATTERS

### A. In General

As provided in Section 13.4 of the Plan, the Debtor believes that the New Equity in the Reorganized Debtor and the offering and issuance thereof shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including, without limitation, section 1145 of the Bankruptcy Code. As set forth in Section 13.4 of the Plan, if the issuance of the New Equity does not qualify for an exemption under section 1145 of the Bankruptcy Code, the New Equity shall be issued in a manner, which qualifies for any other available exemption from registration, whether as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder.

### B. Distribution Trust Related Matters

#### 1. Initial Issuance of Beneficial Interests

Unless an exemption is available, the offer and sale of a security generally is subject to registration with the United States Securities and Exchange Commission (the "SEC") under

Section 5 of the Securities Act of 1933, as amended (the "<u>Securities Act</u>").  In the opinion of the Debtor, and based on "no action" letters by the SEC, the Beneficial Interests will not be considered "securities" within the definition of Section 2(11) of the Securities Act and corresponding definitions under state securities laws and regulations ("<u>Blue Sky Laws</u>") because the Beneficial Interests will be uncertificated and non-transferable other than by operation of law.  Accordingly, the Beneficial Interests should be issuable in accordance with the Plan without registration under the Securities Act or any Blue Sky Law.

Alternatively, in the event that the Beneficial Interests are deemed to constitute securities, section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan of reorganization from registration under the Securities Act and Blue Sky Laws if three principal requirements are satisfied:

A.      the securities are offered and sold under a plan of reorganization and are securities of the debtor, of an affiliate of the debtor participating in a joint plan with the debtor, or of a successor to the debtor under the plan;

B.      the recipients of the securities hold a pre-petition or administrative claim against the debtor or an interest in the debtor; and

C.      the securities are issued entirely in exchange for recipient's claim against or interest in the debtor, or principally in such exchange and partly for cash or property.

If and to the extent that the Beneficial Interests may constitute securities, the  Debtor believes that these beneficial interests issued in respect of certain Allowed Claims and Equity Interests will qualify as securities "of the debtor … or of a successor to the debtor" pursuant to section 1145(a)(1).  In addition, the Beneficial Interests will be issued entirely in exchange for such Claims and Equity Interests.  Thus, the Debtor believes that the issuance of the Beneficial Interests pursuant to the Plan will satisfy the applicable requirements of section 1145(a)(1) of the Bankruptcy Code, and that such issuance should be exempt from registration under the Securities Act and any applicable Blue Sky Law.

The Debtor believes that their reliance upon the foregoing exemptions in respect of the issuance of the Beneficial Interests is consistent with positions taken by the SEC with respect to similar transactions and arrangements by other chapter 11 trustees.  However, the Debtor has not sought any "no-action" letter by the SEC with respect to any such matters, and therefore no assurance can be given regarding the availability of any exemptions from registration with respect to any securities, if any, issued pursuant to the Plan.

**2.      Resales**

The Beneficial Interests will be subject to transfer restrictions under the terms of the Distribution Trust Agreement.  As provided in said agreement, generally, the Beneficial Interests cannot be assigned or transferred other than by operation of law, and will not be represented by certificates.

### 3.    Exchange Act Compliance

Section 12(g) of the Securities Exchange Act of 1934, as amended (the "<u>Exchange Act</u>"), applies only to a company that has both (i) total assets in excess of $10.0 million and (ii) a class of equity securities held of record by more than 2,000 persons or 500 persons who are not accredited investors (within 120 days after the last day of the company's fiscal year).   The Debtor believes it unlikely condition (i) will be deemed satisfied in respect to the Distribution Trust and Beneficial Interests, and in any event, the Distribution Trust should not be required to register under Section 12(g) of the Exchange Act.   The Debtor understands that the staff of the SEC has issued no-action letters with respect to the non-necessity of Exchange Act registration of a bankruptcy plan trust when the following are true:

> A.    the beneficial interests in the trust are not represented by certificates or, if they are, the certificates bear a legend stating that the certificates are transferable only upon death or by operation of law;

> B.    the trust exists only to effect a liquidation and will terminate within a reasonable period of time; and

> C.    the trust will issue annual unaudited financial information to all beneficiaries.

Based on the foregoing, the Debtor believes that the Distribution Trust will not be subject to registration under the Exchange Act.   However, the views of the SEC on the matter have not been sought by the Debtor and, therefore, no assurance can be given regarding this matter.

### 4.    Compliance if Required

Notwithstanding the preceding discussion, if the Distribution Trustee, in relation to the Distribution Trust, determines, with the advice of counsel, that the Distribution Trust is required to comply with the registration and reporting requirements of the Exchange Act, then prior to the registration of the Distribution Trust under the Exchange Act, the Distribution Trustee (subject to the terms of the Distribution Trust Agreement) will seek to amend the Distribution Trust Agreement, to make such changes as are deemed necessary or appropriate to ensure that the Distribution Trust is not subject to registration or reporting requirements of the Exchange Act.   The Distribution Trust Agreement, as so amended, will be effective after notice and opportunity for a hearing, and the entry of an order of the Bankruptcy Court.

If the Distribution Trust Agreement, as amended, is not approved by the Bankruptcy Court or the Bankruptcy Court otherwise determines in a Final Order that registration under the Exchange Act (or any other related or similar federal laws) is required, then the Distribution Trustee will take such actions as may be required to satisfy the registration and reporting requirements of the Exchange Act (or any other related or similar federal laws).

## X.    <u>RECOMMENDATION</u>

In the opinion of the Debtor, the Plan is superior and preferable to the alternatives described in this Disclosure Statement.  Furthermore, the value being provided to Creditors and Interest Holders under the Plan was subject to a competitive process through which parties other than the Plan Sponsor could have provided higher and better bids.  Accordingly, the Debtor recommends that holders of Claims entitled to vote on the Plan vote to accept the Plan and support Confirmation of the Plan.

Dated: [          ]

Respectfully submitted,

FirstRain, Inc.

*[_____]*

# EXHIBIT A

**Plan of Reorganization**

**\* The Plan has been separately filed with the Court, concurrently herewith.**

# <u>EXHIBIT B</u>

## Liquidation Analysis

114586384v2